2 Utah 2d 208 (1954)
271 P.2d 846
IN RE BEAR RIVER DRAINAGE AREA.
RANDOLPH LAND & LIVESTOCK CO. ET AL.
v.
UNITED STATES ET AL.
No. 7983.
Supreme Court of Utah.
June 18, 1954.
McKay, Burton, McMillan & Richards, Paul Reimann, Milton A. Oman, Salt Lake City, for appellant.
A. Pratt Kesler, U.S. Dist. Atty., Salt Lake City, J. Lee Rankin, Asst. Atty. Gen., William H. Veeder, Sp. Asst. to the Atty. Gen., E.R. Callister, Atty. Gen., Robert B. Porter, Asst. Atty. Gen., for respondent.
CROCKETT, Justice.
This proceeding arises out of a general determination of water rights in the Bear River which was initiated by the State Engineer. Certain livestock owners objected to claims which the government had filed for livestock watering rights based on the use by grazers on the public domain and permittees in the Cache National Forest. This appeal was taken from the trial court's disallowance of their objections.
Pursuant to statute,[1] the State Engineer on July 13, 1942, petitioned the Rich County District Court to adjudicate the relative rights of all water users on the Bear River and its tributaries. Subsequently the original petition was amended and in September 1948 the district court entered an order for publication of notice to water claimants. The United States Forest Service and Bureau of Land Management filed numerous water claims as did the various objectors. After the proposed determination was published the appellants filed objections to all the government water claims, contending that the United States of America could not acquire rights to the use of water arising on government land where their claims are based on stock watering by private parties on the public domain from 1865 till 1906 and by permittees in the National Forest from 1906 up to the present time. The objectors claim that the government neither owned any of this livestock nor stood in privity with the owners. They further contend that stock watering rights can only be acquired by a livestock owner who makes beneficial use of the water.
The district court held a hearing on the objections. A stipulation was entered into between the objectors and the government whereby the parties agreed that in each instance of appropriation of water by the United States from the same source of supply as the objectors, the final decree could show the objectors' rights senior to those of the government. On the basis of this stipulation the district court held that no justiciable issue existed between the parties and entered an interlocutory decree dismissing the objections. The objectors appealed from this decree, claiming that the United States could acquire no water rights whatever because it had not made beneficial use of the water.
The United States, by way of answer, moved to dismiss the appeal claiming that the general determination was a suit against the government which, in the absence of Congressional waiver could not be maintained. The objectors in their reply claimed that this was not a suit against the government, that the United States voluntarily filed water claims and thus submitted themselves to the court's jurisdiction, that subsequently the Attorney General of the United States authorized the U.S. Attorney for Utah to appear and represent the government interest.
The government responded that the officials of the United States Forest Service and the Bureau of Land Management had no authority to file claims in this proceeding which might result in submitting federal water rights to a court adjudication nor had the Attorney General of the United States or any other official of the national government authority to submit the United States to the jurisdiction of the Utah state courts in this matter. It is evident that unless jurisdiction was acquired over the United States of America the district court could not adjudicate its water rights. Preliminary to ascertaining whether the district court obtained the requisite jurisdiction it is appropriate and helpful to analyze the rights involved, the proceedings and the position of the parties.
The rights to the use of water which are the subject matter of this suit have been characterized by this and other courts as an interest in real property. As we said in Cortella v. Salt Lake City, 93 Utah 236, 72 P.2d 630, the right itself is treated as an incorporeal hereditament and is real property. In Elliot v. Whitmore, 10 Utah 238, 37 P. 459, we held that an injunction requiring a defendant in possession to give plaintiff part of the water of a stream is in effect a judgment for the delivery of the possession of real property.
We have further held that an action to determine the rights to the use of water, and the legal principles by which it is controlled, are the same as in an action to determine title to real estate.[2] And a suit to quiet title to water rights is in the nature of an action to quiet title to real estate.[3]
The purpose of the statutory procedure, Ch. 4, Title 73, U.C.A. 1953, for the determination of water rights is to prevent piecemeal litigation or a multiplicity of suits and to provide a means of determining all rights in one action.[4] Once the determination has commenced the statute provides that notice shall be sent to all water claimants known to the State Engineer, that they shall be served with summons, that all other parties shall be served by publication of summons, that they all shall file water claims within a stated period, the claims themselves standing in the place of pleadings. The statute further provides: "Any person failing to make and deliver such statement of claim to the clerk of the court within the time prescribed by law shall be forever barred and estopped from subsequently asserting any rights, and shall be held to have forfeited all rights to the use of the water theretofore claimed by him". U.C.A. 1953, 73-4-9.
In summary of the foregoing, it is evident that water rights are property rights and a general determination is in essence an action to quiet title to property rights. However it differs from the ordinary private suit in that it is a statutory procedure which may be commenced by the state engineer for the purpose of bringing into the suit every water claimant or user on a single source or system and require them to litigate and settle their relative rights in one proceeding.
We are here concerned with the question whether the proceeding described above is a proceeding against the United States. The Supreme Court has held that where a judgment sought would expend itself on the public treasury or domain it is a suit against the sovereign.[5] If the objectors prevailed in their appeal the result would be that the government would lose its water rights which are vital to the permittees grazing in the Cache National Forest. It is self-evident that under the definition just quoted, as laid down by the Supreme Court, this case is a suit against the government.
It is elemental that the Federal government cannot be sued without its consent and it has been held that there is no distinction between suits against the government directly and suits against its property.[6] Nor can an officer of the government waive the exemption of the United States from judicial process or submit the United States or its property to the jurisdiction of the court.[7] The waiver of sovereign immunity is the sole prerogative of Congress. No such waiver exists in this case.
We cannot agree with the objector's contention that this is not a suit against the government, because it voluntarily filed claims and submitted itself to the court's jurisdiction. This is not a private suit which the government commenced by filing pleadings; it is a statutory procedure which was commenced by the state engineer wherein all water claimants were required to submit and defend their water claims. As we have previously noted, since this adjudication could adversely affect property rights claimed by the government, no federal officer had the authority to voluntarily submit these rights to the district court's jurisdiction.
The objectors place much weight on the case of the United States v. District Court, Utah, 238 P.2d 1132, wherein the United States made application with the state engineer to change the point of diversion for irrigation water. After a hearing the state engineer allowed the application but certain objectors appealed to the district court from the state engineer's decision. The United States commenced an original proceeding against the district court for a writ to prevent it from exercising jurisdiction, claiming that the suit would be a suit against the government in violation of their sovereign immunity. This contention is the only point of similarity with the present case. In contrast we find that the government commenced the action in the former case whereas here the state engineer initiated the proceeding. Also, unlike the present action, there the government did not stand to lose valuable property rights. Most important, in denying the writ the court pointed out that there was Congressional authority, in the form of a statute, which granted jurisdiction to state courts in such a proceeding. Such authority is missing in the present case. It therefore appears that the case of United States v. District Court does not support the objectors' position.
The objectors' reliance on the telegram sent by the Attorney General to the United States Attorney for Utah saying: "You are authorized to appear in this matter to protect the interest of the United States in the use of waters claimed by it.", is unwarranted. As we have noted previously no officer of the United States, not even the Attorney General has the authority to waive the government's sovereign immunity.
In the case of Stanley v. Schwalby, supra, an action was brought against certain officers of the United States to quiet title to a part of a United States Military Reservation. The United States Attorney for that district appeared for the United States under authority from the Attorney General of the United States who instructed him, "* * * to appear and defend the interests of the United States involved therein." The Supreme Court of the United States held [162 U.S. 255, 16 S.Ct. 760]: "* * * Neither the * * * attorney general, nor any subordinate * * * has been authorized to waive the exemption of the United States from judicial process, or to submit the United States, or their property, to the jurisdiction of the court * * *. The answer actually filed by the district attorney, if treated as undertaking to make the United States a party defendant in the cause, and liable to have judgment rendered against them, was in excess of the instructions of the attorney general, and of any power vested by law in him or in the district attorney, and could not constitute a voluntary submission by the United States to the jurisdiction of the court."
Since no jurisdiction was acquired over the United States, no decree entered could adversely affect any water rights it claims. We do not have to pass on the merits either of its claims or of the claims of objectors. In passing we note that in 1952, Congress by statute, 43 U.S.C.A. § 666, has now consented to be joined as a party in the adjudication of rights to the use of water, allowing process to be served on the Attorney General.
Cause remanded with directions to enter the judgment and decree in conformity with this opinion. Each party to bear his own costs.
McDONOUGH, C.J., and WADE, J., concur.
WOLFE, C.J., being disqualified, did not participate in the hearing of this cause.
ELLETT, District Judge.
I dissent. Since I cannot agree with the holding of the majority of the court, I desire to set forth briefly my reasons therefor. In the first place, no one, including the United States of America, can own the water which flows in the streams of the State of Utah.
Title 73, chapter 1 of Utah Code Annotated 1953 declares in Section 1 that all waters in this state, whether above or under the ground, are hereby declared to be the property of the public, subject to all existing rights to the use thereof. As has been said, the water which may be diverted from the streams of this state may not yet have fallen within the confines of Utah and perhaps is at this time in the oceans and seas awaiting the clouds and the wind to bring the same to our mountains, where it will be precipitated as rain and snow. There thus can be no ownership of water as there is an ownership of land and other property. There is merely a right to use, and this right must be regulated with reference to the rights of all other people.
Section 4 of the above-quoted title provides in substance that when an appropriator or his successor in interest shall abandon or cease to use water for a period of five years, the right shall cease, and thereupon such water shall revert to the public and may be again appropriated as provided by law.
Section 3 of said title provides that beneficial use shall be the basis, the measure, and the limit of all rights to the use of water in this state.
Water is the life of an arid state such as ours, and the right to the use thereof must be carefully guarded and perpetually regulated in order that the greatest good may be had therefrom. When the United States of America through its Forest Service or the Bureau of Land Management complies with the laws of the State of Utah and appropriates water, it has the same sort of a vested interest in the right to the beneficial use of water as any other private citizen has, and it should be subject to the same regulation in the manner in which it uses water as all other citizens. We are not dealing with property secured by the Government of the United States under the right of eminent domain. We are dealing with a proprietary interest; and to permit the agencies of the United States to initiate a claimed right to the use of water and then to clothe that initiated right with a cloak of sanctity and to place it beyond the pale of regulation is to deny to the people of this state the full use of water.
When an application is made for the right to use water in this state, whether that application be made by an agency of the Government of the United States or by a private citizen, it is done with a knowledge that that right is subject to regulation and also with a knowledge that all people in this state are alert to see that the water diverted is put to beneficial use.
Chapter 4, Section 1, of Title 73, Utah Code Annotated 1953, sets forth the manner in which each appropriator may prevent others from wasting water. This section provides that upon a verified petition to the state engineer signed by five or more or a majority of water users upon any stream or water source requesting the investigation of the relative rights of the various claimants to the water of such stream or water source, it shall be the duty of the state engineer, if upon such investigation he finds the facts and conditions are such as to justify a determination of such rights, to file in the district court an action to determine the various rights. The court then can determine whether or not the water is being put to beneficial uses. It is the duty of every person who claims the right to divert water to set forth his claim; and if he fails to do so, under Section 9, Chapter 4, Title 73, Utah Code Annotated 1953, that claimant is forever barred of all rights to the use of water theretofore claimed by him.
Such a proceeding initiated by the state engineer is not a suit against the Government of the United States. It is simply a regulation by the State of Utah to make sure that the Government of the United States in its proprietary character and all other people who claim the right to the use of water are complying with that part of the law which says that beneficial use shall be the basis, the measure, and the limit of all rights to the use of water in this state.
In the case of Belknap against Schild cited in the prevailing opinion, the Federal District Attorney under direction of the Attorney General of the United States raised objections to any proceedings being had against the Government of the United States. That was a suit involving land owned by the United States and differs from the instant case before this court in two particulars: (a) the United States owns no property in this suit but merely has a right to the use of water; (b) under the direction of the Attorney General of the United States, the District Attorney of Utah raised no objections to the suit herein, but instead he joined in a stipulation and asked the district court to determine the case upon the merits based upon that stipulation.
The dispute in this case arises primarily because the United States owns title to grazing land upon which its permittees pasture large numbers of livestock. The objectors and appellants own small land holdings in the midst of the grazing preserve; and if appellants could prevent the United States or its grazing permittees from acquiring any water, the value of their own holdings would be greatly enhanced. On the other hand, for the Government of the United States to obtain any rights superior to those claimed by appellants, it is necessary that the United States base its rights to the use of water upon the fact that private citizens who have grazed livestock upon the lands belonging to the United States have permitted those livestock to drink from streams and springs over a period of some seventy-five years.
It seems clear to me that under our law the mere watering of livestock in a public stream or other source of water would give no rights under the statute to the owner of the livestock or to his landlord. In the case of Bountiful City v. De Luca, 77 Utah 107, at page 118, 292 P. 194, at page 199, 72 A.L.R. 657 the court says:
"Under our laws, rights in and to the use of public waters, or of a natural stream or source, may be acquired only by appropriation and by an actual diversion of waters from the natural channel or stream and a beneficial use made of them and as by our statutes provided. Neither the defendants nor their predecessors made any diversion of the waters of the creek for watering live stock or for any other purpose. They, without any diversion, merely permitted animals to drink directly from the creek. That gave them no right to or possession of the use of the waters, for as said by the author, 2 Kinney on Irrigation and Water Rights, 1242, that as: `no possession or exclusive property (of water) can be acquired while it is still flowing and remaining in its natural channel or stream, it follows, therefore, that in order to obtain possession of the water attempted to be appropriated, it is an indispensable requisite that there must be an actual diversion of the water from its natural channel into the appropriator's ditch, canal, reservoir, or other structure.'"
However, it would also seem clear that in the desert, animal life needs no appropriated water in order to drink to quench thirst. In the case of Adams v. Portage Irr. Reservoir & Power Co., 95 Utah 1, at page 11, 72 P.2d 648, at page 652, Justice Larson in speaking of water still flowing in streams wrote:
"Waters in this state are of two classes, public waters and private waters. The latter class is not only subject to exclusive control and ownership, but may be used, sold, or wasted. It consists of such waters only as have been reduced to actual, physical possession of an individual by being taken into his vessels or storage receptacles. It is private property and may be the subject of larceny. Public waters, on the other hand, are not the subject of larceny. The title thereto is in the public; all are equal owners; that is, have coequal rights therein, and one cannot obtain exclusive control thereof. These waters are the gift of Providence; they belong to all as nature placed them or made them available. They are the waters flowing in natural channels or ponded in natural lakes and reservoirs. The title thereto is not subject to private acquisition and barter, even by the federal government or the state itself. In the interests of order in the social and economic set, rights to the use thereof may be granted to bodies or individuals as provided by law, but no title to the corpus of the water itself has been or can be granted, while it is naturally flowing, any more than it can to the air or the winds or the sunshine. `Such water,' says Blackstone, `is a movable, wandering thing,' here today and there tomorrow, like wild birds on the wing. But one may obtain a right to the use thereof. He may acquire a right to take or divert the water from the stream or lake and thus reduce such part into his exclusive possession and control, in his ditches, canals, reservoirs, buckets, or other receptacles. Having thus captured the `wild,' he acquires a property right therein as long as he maintains his capture, his possession. * * *
"And so, while water is still in the public, everyone may drink or dip therefrom or water his animals therein, subject to the limitations above noted as to the rights of the appropriator as fixed by law to his quantity and quality."
It thus appears to me that the district court was doubly right when he ruled that there was no justiciable controversy between the parties to this action. In the first place, a stipulation was signed to the effect that any rights possessed by the Government of the United States would be inferior to the rights of appellant; and, in the second place, the grazing permittees of the Government of the United States have had and will continue to have a right to water their livestock from natural streams flowing on the land belonging to the United States.
I, therefore, would affirm the judgment of the lower court.
HENRIOD, J., concurs in the dissenting opinion of Judge ELLETT.
NOTES
[1] Chapter 4, Title 100, Revised Statutes of Utah, as amended, now 73-4-1 to 19 U.C.A. 1953).
[2] Logan, Hyde Park & Smithfield Canal Co. v. Logan City, 72 Utah 221, 269 P. 776.
[3] Hammond v. Johnson, 94 Utah 20, 66 P.2d 894.
[4] Smith v. District Court, 69 Utah 493, 256 P. 539; Watson v. District Court, 109 Utah 20, 163 P.2d 322, 323.
[5] In re State of New York, 256 U.S. 490, 41 S.Ct. 588, 65 L.Ed. 1057; Land v. Dollar, 330 U.S. 731, 67 S.Ct. 1009, 91 L.Ed. 1209.
[6] Belknap v. Schild, 161 U.S. 10, 16 S.Ct. 443, 40 L.Ed. 599.
[7] Carr v. United States, 98 U.S. 433, 25 L.Ed. 209; Stanley v. Schwalby, 162 U.S. 255, 16 S.Ct. 754, 40 L.Ed. 960.