409 P.2d 970

**ST. GEORGE CITY, a municipal corporation, Plaintiff and Respondent,**

**v.**

**Steven E. KIRKLAND, Melvin Adams, Marion Jolley and Washington City, a municipal corporation, Defendants and Appellants.**

**No. 10398.**

Supreme Court of Utah.

Jan. 20, 1966.

1. Wigmore, Evidence (3d ed.) § 58.

Backman, Backman & Clark, Boyden, Tibbals, Staten & Croft, Don Stringham, Salt Lake City, for appellants.

Phil L. Hansen, Atty. Gen., Charles M. Pickett, Pickett & Pickett, St. George, Dallin Jensen, Asst. Atty. Gen., for respondent.

HENRIOD, Chief Justice.

Appeal from three cases involving the same water, but each being bottomed on a different right and theory. Affirmed in part and remanded for further proceedings to determine any genuine issues of fact. No costs awarded.

Both sides conceded on oral argument that there were fact issues that should be determined to settle disputed claims or assertions, and taking their word for it, we suggest that each side apprise the trial court of the facts it seeks to establish, if it considers they may establish rights to and in the use of the subject water dehors of and independent of our decision here.

All of the cases indirectly or directly raise the question of beneficial user or abandonment of rights in the water over a period of 50 years, the life of the Mill Creek Water Company's charter, which expired by lapse of time in 1953, and during a period of four years from 1953 to 1957. No one challenged any rights of the shareholders' beneficial user during the 50 year period, nor during the four years from the lapse of the old company's charter and the initiation in 1957 of a new company with the same name, the same directors, shareholders and the allocation of the same amount of stock in the same ratio as existed in 1953. It seems obvious that everyone innocently forgot about the date the charter lapsed. But the formation of the new corporation gave a number of people a number of ideas about getting hitherto unclaimed rights to the water.

■■ Most of the claims and the rash of filings with the State Engineer when Rip Van Winkle was awakened, directly or indirectly spring from the claim that, come 1953, and the lapse of the charter, the original corporation was as dead as a mackerel, except to scale it and clean it in winding up its affairs, under Title 16–1–2, Utah Code Annotated 1953. The implication, it would appear, is that the rights of the shareholders, the real owners of their half-century and four years beneficial use became forfeit and open to appropriation. After 1953, they had a protected right to a continued beneficial use, although the agency charged to administer and deliver the water to those entitled, was as dead as a mackerel. These shareholders there-after, by agreement, could have appointed a watermaster to administer their rights or could have done the same thing individually or collectively so long as no usurpation of established rights evolved and so long as each shareholder's aliquot interest was not disturbed. After 1953, irrespective of the manner or form of delivery, each shareholder was entitled to his "water turn," if there were no intentional abandonment thereof.

The trial court may have erred somewhat in concluding that Mill Creek #2 *succeeded* to the rights and powers of Mill Creek #1, but it did not err in concluding that #2 "merely provided another vehicle for such ownership (stockholders') and use of such water" consequently that such ownership continued after 1953, and could not be attacked if the same beneficial use continued, whether by individual shareholder, whether by agreement of shareholders among themselves, whether administered by an agent, partnership or anything else. The question is whether they beneficially used the water during the 50 year period, and thereafter,—and there is nothing in the record showing otherwise. The matter having been decided on summary judgment, on remand the court very well might determine that facts claimed by the parties may or may not be such as to demand an opportunity to present them.

We expressed, in Genola Town v. Santaquin City[1] what we have in mind here, when we said:

* * * Stock in a mutual company entails the right to demand such stockholder's aliquot share of the water in proportion as his stock holding bears to all the stock. Water rights are pooled in a mutual company for convenience of operation and more efficient distribution, and perhaps for more convenient transfer. But the stock certificate is not like the stock certificate in a company operated for

1. 96 Utah 88, 80 P.2d 930 (1938).

profit. It is really a certificate showing an undivided part ownership in a certain water supply. It embraces the right to call for such undivided part according to the method of distribution.

The same idea impliedly was repeated in Green Ditch v. Salt Lake City,[2] where the rights of the shareholders were respected and upheld during a period when their mutual water company had no life because of forfeiture of its charter.

We hold, with the trial court, that Mill Creek #2, by proper authority vested in it by those having established interests in the beneficial use of the subject water, acted correctly and under authority by and for its shareholders, and was and is not vulnerable to a claim it had no authority simply because some other agency representing the shareholders earlier became statutorily impotent to act for them.

This conclusion and decision should resolve most of the problems of these cases, but any claims which are not so resolved and which appear to require the taking of evidence to determine the facts in relation to such claims, in fairness to everyone concerned, should be tested by evidence.

McDONOUGH, CROCKETT, WADE and CALLISTER, JJ., concur.

2. 15 Utah 2d 224, 390 P.2d 586 (1964).