**ASSOCIATES FINANCIAL SERVICES COMPANY OF UTAH, INC., Plaintiff and Respondent,**

v.

**Harold SEVY; Winona R. Sevy; Security Title Company of Southern Utah, as Trustee; and John Does I through V, Defendants and Appellants.**

**No. 880459–CA.**

Court of Appeals of Utah.

June 21, 1989.

Robert F. Orton, Virginia Curtis Lee, Salt Lake City, for defendants and appellants.

Willard R. Bishop, Cedar City, for plaintiff and respondent.

Before CONDER,[1] GARFF and GREENWOOD, JJ.

**DEAN E. CONDER, Judge:**

The Defendants Harold and Winona Sevy appeal from a judgment of the district court permitting Associates Financial Services Company of Utah ("Associates") to foreclose their interest in certain irrigation company stock. We affirm.

In 1981, the Sevys sold about thirteen acres of land in Garfield County to Kyle and Cindy Stewart, along with 39 shares of the Long Canal Company, which for many years had furnished irrigation water to the land.[2] To secure payment of the purchase price, the Sevys were beneficiaries of a

---

**1.** Dean E. Conder, Senior District Judge, sitting by special appointment pursuant to Utah Code Ann. § 78-3-24(1)(j) (1987).

**2.** Irrigation companies are a common legal means of owning and distributing irrigation wa-

ter in Utah. Many of them began as cooperative enterprises by early settlers and eventually took corporate form, usually on a not-for-profit basis. The ownership of stock in such a company typically gives the stockholder the right to receive a part of the company's water proportionate to the amount owned. The ownership of stock in the irrigation company thus becomes in some respects tantamount to ownership of the water rights themselves.

trust deed covering both the land and the irrigation company stock. The trust deed was duly recorded. The Long Canal Company issued a stock certificate for the 39 shares in the names of the Stewarts, and this stock certificate remained in the Stewarts' possession.

In 1985, the Stewarts obtained a loan from the Lockhart Company, pledging the canal company stock as collateral. The Lockhart Company took possession of the stock certificate and filed a financing statement covering the stock. A year later, the Stewarts refinanced their loan and borrowed from Lockhart additional funds secured by the same collateral, bringing the total principal debt to $12,213 at 16.5% interest. Lockhart thereafter assigned the loan and security interest, and transferred possession of the stock certificate, to Associates.

Stewarts filed a petition in bankruptcy, and the trustee abandoned the irrigation company stock. Associates thereupon sued to establish the priority of its security interest in the stock. The trial court concluded that the stock was appurtenant to the land and that the Sevys' security interest would thus have priority superior to that of Associates, but that the Sevys were estopped from asserting the priority of their security interest because they permitted the Stewarts to retain possession of the stock certificate. Judgment was accordingly entered on November 4, 1987[3] permitting Associates to foreclose the Sevys' security interest.

The Sevys filed notice of appeal designating the Court of Appeals as the appellate court. The Iron County Clerk treated the appeal as to the Supreme Court, and further filings and motions prior to briefing were made in the Supreme Court. The case was eventually transferred by the Supreme Court to this Court.

■ Associates asserts a lack of appellate jurisdiction based on the fact that the notice of appeal indicates that the appeal is taken to the Court of Appeals. Appellate jurisdiction in this type of case is properly in the Supreme Court,[4] and therefore, the Sevys' notice of appeal was incorrect in stating that the appeal was taken to the Court of Appeals. However, the rules of both Courts recognize that such an error is inconsequential.[5] Moreover, the error caused no real harm in this case, because all filings and proceedings on appeal were before the Supreme Court until the case was transferred here, despite the error on the notice of appeal. Since the purpose of the notice of appeal is fundamentally to give notice that an appeal has been taken,[6] and since no party or court seems to have been misinformed by the error, we find that the notice of appeal is sufficient to establish appellate jurisdiction, despite the error in specifying the appropriate appellate court.

■ We turn to the question of the relative priorities of the parties' security interests[7] in the irrigation company stock, a question of first impression. The trial court based its decision that the Sevys had superior priority on a line of cases interpreting Utah Code Ann. § 73–1–10 (1980), which states that water rights "represented by shares of stock in a corporation.... shall not be deemed to be appurtenant to the land...." Those words have been held to create a mere presumption that irrigation company stock is not transferred with a conveyance of the land to which the stock

---

3. Associates argues that the notice of appeal is untimely, based on the fact that the date stamped on the judgment as the date of entry was altered. There is no claim, however, of unauthorized tampering with the court records, or even of error in showing the date of entry as November 4, 1987. We therefore conclude that the notice of appeal was timely filed.

4. *Compare* Utah Code Ann. § 78–2–2 *with* Utah Code Ann. § 78–2a–3 (1988).

5. R. Utah Sup.Ct. 4C; R. Utah Ct. App. 4C.

6. *Wood v. Turner,* 18 Utah 2d 229, 419 P.2d 634, 635 (1966); *Nunley v. Stan Katz Real Estate, Inc.,* 15 Utah 2d 126, 388 P.2d 798 (1964).

7. The trust deed of which the Sevys were named beneficiaries suffices as a security agreement and both parties appear to have satisfied the prerequisites of Utah Code Ann. § 70A–9–203 (1980) for creation and attachment of their security interests in the stock.

has provided water, and the presumption is rebuttable by clear and convincing evidence.[8] All of these cases involved a conveyance of full title rather than creation or priority of a security interest, the issue being whether the irrigation stock was included in a conveyance of the land on which the water was used.

Applying the case law just described to establish superior priority in the Sevys would be at variance with the priority structure prescribed by Article 9 of the Utah Uniform Commercial Code. Priority under Utah Code Ann. § 70A–9–312(5) (1980) is determined generally according to the date on which the security interest is perfected. For an "instrument" such as a certificated security, perfection is accomplished by possession of the certificate evidencing the security, except for a 21–day period of automatic perfection immediately after attachment of the security interest.[9] The Sevys did not take possession of the irrigation company stock certificate, and thus did not perfect their security interest in the irrigation company stock. Therefore, under Article 9, their priority is inferior to that of Associates, whose predecessor took possession of the certificate and transferred possession of it to Associates.

For Article 9 to apply, the irrigation company stock must fall within the definition of an "instrument," which is defined in Utah Code Ann. § 70A–9–105(1)(i) as including a "security." "Security" is in turn defined in § 70A–8–102(1)(a), which provides:

(a) A "security" is an instrument which (i) is issued in bearer or registered form; and (ii) is of a type commonly dealt in upon securities exchanges or markets or commonly recognized in any area in which it is issued or dealt in as a medium for investment; and (iii) is either one of a class or a series or by its terms is divisible into a class or series of instruments;

and (iv) evidences a share, participation or other interest in property or in an enterprise or evidences an obligation of the issuer.

The stock here in question appears to be issued in registered form as some of a series or classes of corporate stock, and the stock certificate evidences a share in the irrigation enterprise of the Long Canal Company. The Sevys assert, however, that the stock is not "of a type commonly dealt in upon securities exchanges or markets or commonly recognized in [Utah] as a medium for investment." We are nevertheless of the opinion that irrigation company stock is a "medium of investment." It may be true that there is no established stock exchange or institutionalized market for trading in irrigation company stock in Utah. However, the stock of an irrigation company ordinarily embodies its capital, provides a return to its owners in the form of water use, and was the means by which it amassed the resources to obtain its water rights and build its water transport and distribution system. It is accordingly a medium of investment.

In holding that Article 9 establishes the superior priority of Associates' security interest, we distinguish the line of cases holding that stock in an irrigation company may be appurtenant to, and impliedly conveyed with, an interest in real property. The rule of those cases does not apply to the creation and perfection of security interests in irrigation company stock. This conclusion is grounded in the rule that a later statute supersedes an earlier statute if the two are in conflict,[10] inasmuch as the Uniform Commercial Code, enacted in 1965 in Utah, followed in time section 73–1–10 of Utah Code Ann., which was last amended in 1959. Moreover, in view of the importance of uniformity and predictability in

**8.** *Roundy v. Coombs,* 668 P.2d 550 (Utah 1983); *Abbott v. Christensen,* 660 P.2d 254 (Utah 1983); *Hatch v. Adams,* 7 Utah 2d 73, 318 P.2d 633, *aff'd on reh.,* 8 Utah 2d 82, 329 P.2d 285 (1958) (decided on rehearing on the basis of the parol evidence rule) *Brimm v. Cache Valley Banking Co.,* 2 Utah 2d 93, 269 P.2d 859 (1954).

**9.** Utah Code Ann. § 70A–9–304(1), (4) (1980); *see also* R. Henson, *Handbook on Secured Transactions* 108–110 (1973).

**10.** *Pride Club v. Miller,* 572 P.2d 385, 387 (Utah 1977); *see also Ellis v. Utah State Retirement Bd.,* 757 P.2d 882, 884–85 (Utah Ct.App.1988).

commercial law,[11] we favor a result which will not have the effect of creating an exception to the Article 9 priority structure for something which has the appearance of fitting rather clearly within that structure. We also note, as the trial court did, that it is equitable, as between Sevys and Associates, that the loss resulting from the double collateralization fall upon the Sevys, who, albeit unwittingly, left the Stewarts in the position to again borrow on the stock.

We therefore hold that the security interest of Associates in the irrigation company stock is prior to the unperfected security interest of the Sevys, and that Associates may foreclose the Sevys' security interest in accordance with Article 9 of the Utah Uniform Commercial Code. The order of the district court is therefore affirmed.[12]

GARFF and GREENWOOD, JJ., concur.

---

11. *See,* Utah Code Ann. § 70A–1–102(1) (1980) and § 70A–1–102(2)(c); *Butts v. Glendale Plywood Co.* 710 F.2d 504, 506 (9th Cir.1983).

12. Because we hold that Associates' security interest is prior to that of the Sevys, we do not reach the question of estoppel on which the district court based its decision, or the question whether the material facts concerning estoppel were in dispute so as to preclude summary judgment.