SALT LAKE CITY CORPORATION, a municipal corporation of the State of Utah, Plaintiff and Appellee,

v.

CAHOON AND MAXFIELD IRRIGATION COMPANY, a Utah corporation, Defendant and Appellant,

and

David B. Wirthlin as Managing partner of JLW Company, a limited partnership, and Richard Turner, Defendants and Appellee.

SANDY CITY CORPORATION, a municipal corporation of the State of Utah, Plaintiff and Appellee,

v.

CAHOON AND MAXFIELD IRRIGATION COMPANY, a Utah corporation, Defendant and Appellant.

No. 930293.

Supreme Court of Utah.

July 8, 1994.

Roger F. Cutler and Ray Montgomery, Salt Lake City, for Salt Lake City Corp.

E.J. Skeen and Paul M. Durham, Salt Lake City, for Cahoon & Maxfield Irr.

James W. McConkie, Salt Lake City, for JLW Co.

Lee Kapaloski and Paul D. Veasy, Salt Lake City, for Sandy City Corp.

RUSSON, Justice:

Cahoon and Maxfield Irrigation Company (the Irrigation Company) appeals from the trial court's entry of summary judgment in favor of Salt Lake City Corporation and

Sandy City Corporation. We reverse and remand.

## FACTS

The underlying dispute in this case arises out of two initially unrelated and separate purchases of Irrigation Company stock by Salt Lake City and Sandy City. Relying on a restriction contained in its articles of incorporation, the Irrigation Company refused to register and transfer to either Salt Lake City or Sandy City any of the stock involved in these purchases.

On January 30, 1987, Salt Lake City purchased seventy shares of Irrigation Company stock: sixty-two and one-half shares from JLW Co. represented by five stock certificates,[1] and seven and one-half shares from Richard Turner represented by a single stock certificate.[2] After JLW Co. and Turner endorsed their respective stock certificates, Salt Lake City delivered the signed stock certificates to the Irrigation Company and requested that the stock be registered in its name and that certificates reflecting the new ownership of the said stock be issued.

Article XIX of the Irrigation Company's articles of incorporation reads in part:

### CERTIFICATE OF STOCK; TRANSFERS

. . . .

(b) No transfer of stock shall be permitted without the approval, in advance, by the vote of a majority of the members of the Board of Directors at a meeting specifically called, noticed, and held for considering such transfer.

1. Each of the stock certificates listed on its face the number of shares it represented and the specific fork from which the holder may obtain water. Stock certificate No. 3014 was for eleven shares and designated that the water come from Tripp Fork, No. 3015 for two shares from Lester Fork, No. 3016 for thirty shares from Tripp Fork, No. 3017 for four and one-half shares from Maxfield Main Fork, and No. 3018 for fifteen shares from Lester Fork.

2. Stock certificate No. 3775 designated Maxfield Main Fork as the fork from which the holder could receive water.

On the basis of this restriction, the Irrigation Company denied Salt Lake City's request because neither Salt Lake City nor the sellers had obtained prior approval of the transfer from the Irrigation Company's board of directors.

In April 1989, Salt Lake City filed a complaint seeking an order requiring the Irrigation Company to register the seventy shares of stock in Salt Lake City's name and issue new stock certificates.[3] Salt Lake City's complaint alleged that no restrictions appeared on either the face or the back of any of the certificates to indicate that the Irrigation Company could refuse to register or transfer the stock in question. In its answer, the Irrigation Company admitted that it had refused to register and transfer the stock in question and that the certificates did not contain any restrictions, but argued that its refusal to do so was justified under article XIX of its articles of incorporation.

On March 6, 1990, Salt Lake City moved for summary judgment against the Irrigation Company, asserting that its failure to indicate on the certificates in question that it could refuse to register or transfer the corresponding stock violated Utah Code Ann. § 70A–8–204(1) (1990), which provides that a restriction on transfer of a certificated security is ineffective unless such "restriction is noted conspicuously on the instrument." The Irrigation Company responded that because the stock in question is not a security as defined by Utah Code Ann. § 70A–8–102(1)(a) (1990), its articles of incorporation, not the investment securities act, governed the transfer and under article XIX, such refusal was justified. On September 4, 1990, the trial court denied Salt Lake City's motion.

3. Salt Lake City's complaint sought, in the alternative, an order compelling JLW Co. and Richard Turner to repay Salt Lake City the funds paid to them for the stock. However, because JLW Co. subsequently joined Salt Lake City in filing the motion for summary judgment from which the Irrigation Company appeals and Turner is not a party to this appeal, we do not address Salt Lake City's claims against JLW Co. and Turner on appeal.

In an initially unrelated transaction on November 15, 1991, Sandy City entered an agreement with the Salt Lake City Water Conservancy District to purchase thirty-eight shares of Irrigation Company stock.[4] The water conservancy district endorsed the stock certificates, and Sandy City delivered the signed certificates to the Irrigation Company, requesting registration and transfer.[5] However, as it had with Salt Lake City, the Irrigation Company denied Sandy City's request on the basis of the restrictions contained in article XIX of its articles of incorporation because neither the water conservancy district nor Sandy City had requested prior approval of the transfer from the Irrigation Company's board of directors.

On May 7, 1992, Sandy City filed a complaint against the Irrigation Company, seeking an order requiring it to register the stock in Sandy City's name and to issue new certificates. Like Salt Lake City, Sandy City alleged that the certificates contained no restrictions prohibiting transfer of the stock. In its answer, the Irrigation Company admitted that it had refused to transfer the stock but denied the allegation that there were no restrictions regarding transfer on the certificates and further asserted that it was entitled to refuse transfer of the stock on the basis of the restrictions contained in article XIX of its articles of incorporation.

On May 8, 1992, Sandy City moved to consolidate its suit with the still-pending Salt Lake City suit; the motion was granted. On February 16, 1993, Sandy City moved for summary judgment, arguing that because (1) the Irrigation Company stock is a security subject to Utah Code Ann. § 70A–8–102(1)(a)

(1990) and (2) the certificates in question did not indicate that the Irrigation Company could refuse to register or transfer the corresponding stock, the trial court should order the Irrigation Company to register the stock in Sandy City's name and issue new stock certificates. On February 22, 1993, Salt Lake City and JLW Co. jointly filed a similar motion for summary judgment. On March 15, 1993, the Irrigation Company responded to both of these motions, arguing that summary judgment was inappropriate because (1) there was a mixed question of law and fact on the issue of whether its stock was a certificated security, as defined by section 70A–8–102(1)(a), and (2) there was a question of fact as to whether Salt Lake City and Sandy City had complied with the applicable articles of incorporation.

On May 4, 1993, the trial court granted the above motions on the ground that the Irrigation Company stock was a certificated security under section 70A–8–102(1)(a) and ordered that (1) the Irrigation Company register the stock and issue new stock certificates to Salt Lake City and Sandy City and (2) the Irrigation Company pay Salt Lake City $2000 and Sandy City $9000 in attorney fees.

The Irrigation Company appeals, asserting that the trial court erred in granting plaintiffs' motions for summary judgment and ordering the Irrigation Company to register the stock in question, to issue new stock certificates to Salt Lake City and Sandy City, and to pay plaintiffs' attorney fees. The Irrigation Company's appeal is based on its argument that the stock is not a certificated security subject to section 70A–8–102(1)(a) but rather represents a real property right.[6]

---

4. The thirty-eight shares were represented by two separate stock certificates: Stock certificate No. 3871 was for nine shares and designated that the water come from Gilbert Fork, and No. 3872 was for twenty-nine shares from Maxfield Main Fork.

5. Sandy City had on two prior occasions purchased and registered other shares of Irrigation Company stock: one share designating Maxfield Main Fork on March 31, 1970, and eleven and one-half shares designating the same fork on April 2, 1979. At the times of those purchases, Sandy City owned land that was watered by the forks listed on the stock certificates.

6. On appeal, the Irrigation Company additionally argues that (1) neither Salt Lake City nor Sandy

City complied with the restrictions contained in article XIX governing transfer of stock; (2) reference on the stock certificates to specific forks imposed a duty to inquire as to any transfer restrictions on Salt Lake City and Sandy City; (3) issues of fact exist so as to preclude summary judgment; (4) the trial court's imposition of attorney fees was not supported by the record or by law; and (5) as to Salt Lake City's claims, the September 1990 denial of summary judgment is the law of the case. However, because we dispose of this case on the ground that the Irrigation Company stock is not a certificated security subject to section 70A–8–102(1)(a), we do not address the Irrigation Company's other arguments on appeal.

## STANDARD OF REVIEW

■ When reviewing a trial court's entry of summary judgment, we grant no deference to its conclusions of law but review them for correctness. *East Jordan Irr. Co. v. Morgan,* 860 P.2d 310, 312 (Utah 1993).

## ANALYSIS

■ The Irrigation Company asserts that its stock represents a real property interest and is not a certificated security because its stock does not meet the requirements of Utah Code Ann. § 70A–8–102(1)(a) (1990). Specifically, the Irrigation Company challenges the trial court's conclusion that its stock is a medium for investment. Salt Lake City, Sandy City, and JLW Co. respond that the Irrigation Company stock is a medium for investment, as defined by *Associates Financial Services Co. v. Sevy,* 776 P.2d 650, 652 (Utah Ct.App.1989), and therefore is a security as defined by section 70A–8–102.

Section 70A–8–102(1)(a) states:

A "certificated security" is a share, participation, or other interest in property of or an enterprise of the issuer, or an obligation of the issuer which is:

(i) represented by an instrument issued in bearer or registered form;

(ii) of a type commonly dealt in on securities exchanges or markets, or commonly recognized in any area in which it is issued or dealt in as a medium for investment; and

(iii) either one of a class or series, or by its terms is divisible into a class or series of shares, participations, interests, or obligations.

The Irrigation Company stock clearly meets the first and third requirements; it is represented by registered certificates, and it is divided into shares. The question is whether the Irrigation Company stock meets the second requirement. Since none of the parties allege that the stock at issue here is the type commonly dealt with in security exchanges or markets, our analysis focuses on whether the said stock is commonly recognized as a medium for investment.

The Irrigation Company contends that because its stock represents a right to a proportional allocation of water, such stock is a real property right. Salt Lake City, Sandy City, and JLW Co., relying on *Associates Financial,* argue that "irrigation company stock is a 'medium of investment.'" *Associates Fin.,* 776 P.2d at 652. However, because *Associates Financial* directly contradicts this court's prior decisions, we reject the court of appeals' reasoning in that case.

■ This court has long held that the rights to the use of water reflect "an interest in real property." *In re Bear River Drainage Area,* 2 Utah 2d 208, 211, 271 P.2d 846, 848 (1954). We have further held that "an action to determine the rights to the use of water, and the legal principles by which it is controlled, are the same as in an action to determine title to real estate." *Id.* Pooling the rights to the use of water in a mutual irrigation corporation does not change their nature, and thus they retain their real property characteristics. It is well-settled law that

[s]tock in a mutual company entails the right to demand such stockholder's aliquot share of the water in proportion as his stock holding bears to all the stock. Water rights are pooled in a mutual company for convenience of operation and more efficient distribution, and perhaps for more convenient transfer. *But the stock certificate is not like the stock certificate in a company operated for profit.* It is really a certificate showing an undivided part ownership in a certain water supply. It embraces the right to call for such undivided part according to the method of distribution.

*Genola Town v. Santaquin City,* 96 Utah 88, 101–02, 80 P.2d 930, 936 (1938) (emphasis added); *accord Swasey v. Rocky Point Ditch Co.,* 617 P.2d 375, 379 (Utah 1980); *St. George City v. Kirkland,* 17 Utah 2d 292, 294–95, 409 P.2d 970, 972 (1966).

Further, we find the reasoning of *Associates Financial* faulty. The court of appeals reasoned that

the stock of an irrigation company ordinarily embodies its capital, provides a return to its owners in the form of water use,

and was the means by which it amassed the resources to obtain its water rights and build its water transport and distribution system. It is accordingly a medium of investment.

*Associates Fin.,* 776 P.2d at 652. This analysis is flawed in several respects.

Mutual irrigation corporations differ from other types of corporations in several significant ways, and therefore, their stock should not be treated as a security under section 70A–8–102(1)(a). First, mutual irrigation corporations are not organized to make a profit for their shareholders but rather to allocate water to shareholders who already own the right to use that water. *Smithfield W. Bench Irr. Co. v. Union Cent. Life Ins. Co.,* 105 Utah 468, 475, 142 P.2d 866, 869 (1943); *see also Jacobucci v. District Court,* 189 Colo. 380, 541 P.2d 667, 671 (1975) ("Mutual ditch companies ... [are] formed expressly for the purpose of furnishing water to shareholders, not for profit or hire."). The mutual irrigation corporation "is simply a trustee for the stockholders, and not the owner of the water." *Center Creek Water & Irr. Co. v. Lindsay,* 21 Utah 192, 199, 60 P. 559, 560 (1900); *see also Jacobucci,* 541 P.2d at 672 (stating that mutual ditch companies are "organized solely for the convenience of [their] members in the management of the irrigation and reservoir systems").

Moreover, because they do not make a profit, mutual irrigation corporations do not pay a dividend. The "water use" that the court of appeals describes as a "return" is not equivalent to dividends paid by other corporations because the shareholders in a mutual irrigation corporation already owned the rights to such water use before the formation of the mutual irrigation corporation. The formation of the mutual irrigation corporation did not create a new owner of the water rights which could pay dividends but rather pooled those rights and created a vehicle for the distribution of the stockholder-owned water. *Kirkland,* 17 Utah 2d at 294, 409 P.2d at 971. Shareholders of a mutual irrigation corporation receive as a return on their investment only the *continued* right to use the water. Unlike a dividend distributed by other types of corporations, the distribution of water is not a function of the skill or expertise of the mutual irrigation corporation's management. Stock of a mutual irrigation corporation is different from, and should not be treated like, stock of other types of corporations. Instead, such stock is more akin to a contract between the shareholders for the pooling and distribution of water. *See, e.g., Jacobucci,* 541 P.2d at 671 ("The relationship between the mutual ditch corporation and its shareholders arises out of contract, implied in a subscription for stock and construed by the provisions of a charter or articles of incorporation."). As such, the mutual irrigation corporation's articles of incorporation, if valid,[7] govern any transactions involving the stock. Accordingly, we hold that stock in a mutual irrigation corporation represents an interest in real property and is therefore not a certificated security under section 70A–8–102(1)(a).[8]

7. Because the issue is not before us on this review of summary judgment, we express no opinion as to the validity of the restrictions contained in the Irrigation Company's articles of incorporation.

8. In so holding, we recognize that this court has previously noted in dicta that although "water rights are transferred by deed in substantially the same manner as real estate ... a shareholder's interest in a water company is personal property and is transferred as such." *East Jordan Irr. Co. v. Morgan,* 860 P.2d 310, 313 n. 9 (Utah 1993). As a matter of clarification, we fully appreciate the real property nature of water rights, and while stock memorializing the ownership of such may be classified as personal property, such stock, in fact, represents a real property interest.

We further note that our holding squares with case law from other arid western states. *See, e.g., Pacific States Sav. & Loan Corp. v. Schmitt,* 103 F.2d 1002, 1004 (9th Cir.1939) (stating that under Nevada law, shares in mutual irrigation company appurtenant to land represent real property right); *Twin Falls Land & Water Co. v. Twin Falls Canal Co.,* 7 F.Supp. 238, 246 (D.Idaho 1933) (holding that water stock sold appurtenant to land represents an interest in water which is a real property right), *aff'd,* 79 F.2d 431 (9th Cir.1935), *cert. denied,* 296 U.S. 654, 56 S.Ct. 381, 80 L.Ed. 466 (1936); *Stesel v. Santa Ana River Water Co.,* 35 Cal.App.2d 117, 94 P.2d 1052, 1056 (1939) (same); *Jacobucci,* 541 P.2d at 672 ("The ownership of the shares of stock is merely incidental to the ownership of the water rights by the shareholders.").

## CONCLUSION

Based on the foregoing, we hold that stock in a mutual irrigation corporation represents a real property interest and therefore is not a certificated security under Utah Code Ann. § 70A–8–102 (1990). Accordingly, we reverse and remand for further proceedings consistent with this opinion.

ZIMMERMAN, C.J., and HOWE and DURHAM, JJ., concur.

STEWART, Associate C.J., dissents.