Harold SEVY and Winona Sevy, Plaintiffs and Appellees,

v.

SECURITY TITLE COMPANY OF SOUTHERN UTAH, Defendant and Appellant.

No. 920035–CA.

Court of Appeals of Utah.

July 29, 1993.

Bruce A. Maak and Jeffrey J. Hunt (argued), Salt Lake City, and J. Bryan Jackson, Cedar City, for defendant and appellant.

Robert F. Orton and Clark R. Nielsen (argued), Salt Lake City, for plaintiffs and appellees.

Before BILLINGS, GARFF and ORME, JJ.

BILLINGS, Presiding Judge:

Appellant, Security Title Company, appeals from a judgment determining it was negligent in closing a real estate transaction for Appellees, Harold and Winona Sevy. We reverse as we conclude the Sevys' claim is time-barred.

## FACTS

On April 28, 1981, Harold and Winona Sevy sold Kyle and Cindy Stewart 12.86 acres of irrigated farm land, located in Garfield County, Utah, along with 39 shares of water stock in the Long Canal Company, which furnished irrigation water to the land. Mr. Sevy is a farmer and long time officer of the Long Canal Company. The purchase price for the land and water stock was $25,000, with a down payment of $5000 and annual installments on the unpaid balance.

The Sevys and the Stewarts requested that Russell Dalton, the office manager of Security Title Company of Southern Utah, prepare documents to protect their respective interests in the transaction. The parties told Dalton they wanted to transfer the title to the land and the water stock to the Stewarts, with the Sevys retaining a lien against the land and the water stock to secure payment of the balance of the purchase price. Security Title prepared all of the documents,[1] recorded the warranty deed and deed of trust with assignment of rents, transferred the water stock, and issued a title insurance policy to the Stewarts. Mr. Sevy paid Security Title a $75 escrow fee and a $135 title insurance premium on the title insurance policy issued to the Stewarts.

At the closing, Dalton requested that Mr. Sevy deliver his water stock certificate representing 112 shares of the Long Canal Company to Security Title. In Dalton's presence, Mr. Sevy endorsed the certificate and appointed Security Title as agent to

---

1. Security Title prepared: (1) a warranty deed conveying the land from the Sevys to the Stewarts, (2) a note secured by a deed of trust in the principal amount of $20,000 from the Stewarts to the Sevys, (3) a deed of trust with assignment of rents against the land and water stock from the Stewarts to the Sevys, and (4) an owners title insurance policy for the Stewarts for $25,000, the full amount of the purchase price, which did not include the water stock but only covered the land.

transfer 39 of the 112 shares to the Stewarts on the books of the Long Canal Company. The Long Canal Company then issued a new certificate representing 39 shares of stock in the Stewarts' name, and sent the certificate to Security Title. The company also sent a separate certificate for the remaining 73 shares in Mr. Sevy's name to Security Title. Security Title sent this 73 share certificate to Mr. Sevy soon after the closing.

At the trial on July 8, 1991, the testimony was in conflict as to the delivery of the 39 share water stock certificate, undoubtedly because of the ten years which had passed since the 1981 closing. Mr. Stewart testified that Mr. Sevy gave him the closing documents and the 39 share certificate. Mrs. Stewart testified she received the certificate from her husband shortly after the closing and that he told her he received it from Mr. Sevy. However, Mr. Sevy denied delivering the certificate to the Stewarts. Dalton testified he had no recollection regarding the delivery of the certificate or anything else about the transaction. Based upon this testimony, the trial court found that Security Title delivered the 39 share certificate to the Stewarts.

On August 21, 1985, the Stewarts borrowed money from the Lockhart Company, pledging the 39 shares of water stock as collateral. The Lockhart Company perfected its security interest by taking possession of the 39 share certificate and through filing a financing statement with the Utah State Division of Corporations and Commercial Code on September 3, 1985. On October 2, 1986, the Lockhart Company assigned Associates Financial Services of Utah, Inc. all of its rights against the Stewarts and delivered to Associates Financial the 39 share water stock certificate.

In 1986, the Stewarts defaulted on their payments to the Sevys and the Sevys repossessed the farm land. Thereafter, the Stewarts filed a petition in bankruptcy.

Associates Financial filed suit against the Sevys and Security Title, to establish the priority of its security interest in the 39 shares of water stock on April 15, 1987. The Sevys defended on the merits. On November 2, 1987, summary judgment was entered in favor of Associates Financial. On August 31, 1989, the Sevys repurchased the 39 shares of water stock from Associates Financial for $7250.

The Sevys filed the lawsuit from which this appeal arises against Security Title on December 27, 1989. They alleged Security Title was negligent in not protecting their security interest in the water stock. Security Title moved for summary judgment on the ground that the Sevys' claim was barred under the applicable statute of limitations. The trial court denied the motion.

On September 26, 1991, after a bench trial, the court found Security Title was negligent. The trial court determined the custom and practice in the title industry, in a sale involving water stock in an irrigation company where a seller wishes to retain a security interest, required an escrow agent to either: (1) delay transferring the stock on the books of the corporation until the final payment on the purchase price is made to the seller, (2) make the transfer on the books of the corporation and hold the new certificate in escrow until the final payment is made, (3) transfer the stock on the books of the corporation and deliver the new certificate to the seller with instructions that the seller retain possession of the certificate until final payment is made, or (4) advise the seller to seek legal counsel. The trial court determined that Security Title breached its duty to the Sevys by failing to take any one of these steps.

Furthermore, the court awarded the Sevys attorney fees and costs incurred in defending the Associates Financial action and the amount spent by the Sevys in repurchasing the water stock from Associates Financial. In addition, the court found Security Title's defense of this action was without merit and was not asserted in good faith and thus awarded attorney fees. As an alternative ground for the award of attorney fees in this case, the court also found Security Title's representation to the Sevys that it was qualified to prepare the documents and orchestrate the transaction

was deceptive under the Utah Consumer Protection Act.

On appeal, Security Title argues: (1) The Sevys' claim is time-barred under the statute of limitations; (2) The trial court's finding that Security Title delivered the stock certificate to the Stewarts was clearly erroneous; (3) The trial court erred in awarding the Sevys damages when there was no foreclosure completed on the property secured under the deed of trust; (4) The trial court erred by awarding as damages the attorney fees and costs the Sevys incurred in the action filed against them by Associates Financial; and (5) The trial court erred in awarding the Sevys attorney fees and costs incurred in this action. Additionally, Security Title seeks its costs incurred below and on this appeal. We do not reach many of the issues raised on appeal because we conclude the Sevys'. action against Security Title is time-barred.

## STATUTE OF LIMITATIONS

Security Title argues the trial court erred as a matter of law in concluding the Sevys' claim was not barred by Utah Code Ann. § 78-12-25(3) (1992), the four year negligence statute of limitations. The Sevys respond that the trial court correctly applied the discovery rule to toll the statute of limitations.[2]

The Utah Supreme Court has explained that statutes of limitations " 'are designed to promote justice by preventing surprises through the revival of claims that have been allowed to slumber until evidence has been lost, memories have faded, and witnesses have disappeared.' " *Myers v. McDonald*, 635 P.2d 84, 86 (Utah 1981) (quoting *Order of Railroad Telegraphers v. Railway Express Agency, Inc.*, 321 U.S. 342, 348–49, 64 S.Ct. 582, 586, 88 L.Ed. 788 (1944)). In furtherance of that policy, the general rule is "a cause of action accrues and the relevant statute of limitations begins to run 'upon the happening of the last

event necessary to complete the cause of action ... [and] mere ignorance of the existence of a cause of action does not prevent the running of the statute of limitations.' " *Warren v. Provo City Corp.*, 838 P.2d 1125, 1128–29 (Utah 1992) (quoting *Myers*, 635 P.2d at 86); *see also O'Neal v. Division of Family Services*, 821 P.2d 1139, 1143 (Utah 1991).

Under the general rule, the statute of limitations ran on the Sevys' claim several years before this action was filed. However, the trial court concluded the discovery rule saved the Sevys' claim.

■ Whether the discovery rule applies to toll the statute of limitations is a question of law, thus we "show no deference to the trial court's ruling on appeal, but we review it for correctness." *Klinger v. Kightly*, 791 P.2d 868, 870 (Utah 1990).

The Utah Supreme Court has identified three circumstances where the discovery rule applies: (1) in situations where the discovery rule is mandated by statute; (2) in situations where a plaintiff does not become aware of the cause of action because of the defendant's concealment or misleading conduct; and (3) in situations where the case presents exceptional circumstances and the application of the general rule would be irrational or unjust, regardless of any showing that the defendant has prevented the discovery of the cause of action.

*Warren*, 838 P.2d at 1129 (footnotes omitted); *accord Klinger*, 791 P.2d at 872; *Myers*, 635 P.2d at 86.

There is no Utah statute mandating application of the discovery rule in a negligence action against a title company. Furthermore, the Sevys have not asserted, nor did the trial court find, that Security Title misled the Sevys regarding their cause of action against Security Title. Thus, it is the third instance, the judicially created

---

2. The Sevys, in the section of their brief addressing their discovery rule argument, in two sentences followed by a less than supportive citation, also assert their claim is not time-barred because they were not damaged until 1987 when they could not foreclose their security interest. We refuse to consider this issue on appeal as it was inadequately addressed. *See State v. Yates*, 834 P.2d 599, 602 (Utah App. 1992).

equitable "exceptional circumstances" rule which we analyze on appeal.

## A. Discovery Requirement

The Utah Supreme Court explained in *Warren v. Provo City Corp.*, 838 P.2d 1125 (Utah 1992), that to qualify under the exceptional circumstances exception, the plaintiff must make an "initial showing" that "the plaintiff did not know of and could not reasonably have known of the existence of the cause of action in time to file a claim within the limitation period." *Id.* at 1129. This is a threshold requirement.[3] *O'Neal v. Division of Family Services*, 821 P.2d 1139, 1144 (Utah 1992). In *Warren*, the plaintiff was a pilot who had been injured in a crash of an airplane he had leased from a flying club. After the crash, the plaintiff brought an action against the city for the city's failure to enforce an ordinance regulating flying clubs. The ordinance required flying clubs to assure that their airplanes were airworthy, to maintain insurance, and to file a certificate of insurance at the airport. The city argued the plaintiff's claim was time-barred because it was filed after the applicable statute of limitations had run. The plaintiff argued the discovery rule should be applied to his claim because he did not have reasonable grounds to believe the city was not enforcing its ordinances until after the statute of limitations had run. The court determined the plaintiff's claim did not qualify under the exceptional circumstances exception because the fact that the plane crashed gave the plaintiff reason to question whether Provo city was enforcing its ordinance requiring the flying club to keep its airplanes in an airworthy condition. The court further concluded that since the plaintiff's counsel had contacted the airport within the statutory period about the ordinance that he knew or should have known of its requirements. *Id.* at 1129.

Therefore, for the Sevys to benefit from the discovery rule, and not have their claim barred by the four-year statute of limitations, the trial court had to find the Sevys neither knew of Security Title's failure to protect their security interest in the water shares, nor should have reasonably known of this failure until four years before they filed their lawsuit.

In its written findings of fact the trial court stated:

10. Both Sevy and Stewart believed that Sevy was transferring to Stewart said land and 39 shares of water stock at the time of the transaction and Sevy believed that he had a good and valid first lien against said land and 39 shares of water stock transferred to Stewart to secure payment of the balance of the purchase price.

. . . .

17. Members of the general public rely generally on title [agents] to properly prepare documents and conduct real estate transactions and closings and further rely on what they are told by title companies with respect to real estate transactions.

. . . .

---

**3.** The Utah Supreme Court has consistently held the plaintiff must meet this threshold test before the discovery rule will be applied. *See Atwood v. Sturm, Ruger & Co.*, 823 P.2d 1064, 1065 (Utah 1992) (ruling plaintiff's products liability claim against manufacturer of plaintiff's pistol was time-barred because statute of limitations began to run on date of injury even though plaintiff did not learn the injury may have been caused by a product defect until several months before the statute of limitations expired); *Allen v. Ortez*, 802 P.2d 1307, 1313–14 (Utah 1990) (applying discovery rule to libel action because court held plaintiffs did not know, and could not reasonably have known, of underlying facts giving rise to their cause of action); *Brigham Young Univ. v. Paulsen Constr. Co.*, 744 P.2d 1370, 1374 (Utah 1987) (stating discovery rule did not apply because plaintiff knew of leakage and improper pipe insulation, which gave rise to its cause of action, three and a half years before the statute of limitations period expired); *Jackson v. Layton City*, 743 P.2d 1196, 1199 (Utah 1987) (declining to apply discovery rule in personal injury action because conditions which caused injury were patent); *Christiansen v. Rees*, 20 Utah 2d 199, 436 P.2d 435, 436 (1968) (holding discovery rule applied to medical malpractice action because plaintiff, in exercise of reasonable diligence, could not have discovered presence of foreign object in his body before statute of limitations ran).

19. Sevy relied on Security Title to protect him by providing in said transaction a good and valid first lien in his favor against the real property and shares of water stock being sold and transferred to Stewart.

. . . .

22. Plaintiff, Harold Sevy, is a farmer, does not have a formal education, and relied on Security Title to prepare proper documents and secure his first lien against the real property and water stock. Said Plaintiff had, prior to said transaction, been an officer in The Long Canal Company, but had no knowledge regarding how to transfer shares and how to perfect security interests therein.

23. Plaintiff, Winona Sevy, did nothing more in this transaction than sign documents as requested by her husband, Harold Sevy.

. . . .

25. The first knowledge Sevy had that Stewart had given a lien against said certificate numbered 206 [representing the 39 shares of water stock] in favor of a lending institution was when Sevy was sued by Associates [Financial], as aforesaid.

The court supplements this with an oral finding on discovery:

I find against the Defendant on the Statute of Limitation. . . . The Court makes a finding that the Statute of Limitations would commence as of the time of the discovery, which was the filing of the [Associates Financial] lawsuit.

We agree with Security Title that the findings are not crystal clear as to when the Sevys reasonably should have known of Security Title's failure to protect their security interest. However, we hold that even if the trial court can be credited with finding that the Sevys could not have reasonably known Security Title did not protect their security interest in the 39 shares until they were put on notice of the Associates Financial lawsuit, the court's finding is clearly erroneous.

■ Mr. Sevy knew the water stock had been transferred to the Stewarts' name, as he cooperated in the transfer. In addition, Mr. Sevy knew or should have known there was no ongoing escrow at Security Title because there was no document reflecting any ongoing escrow given to him at closing. Furthermore, the Sevys received the 73 share certificate in their name soon after the closing. Mr. Sevy testified that he knew he did not receive the certificate representing the 39 shares of water stock, which had been transferred into the Stewarts' name. Nothing prevented the Sevys from asking Security Title about the 39 share water stock certificate and how Security Title was protecting their interest in those water shares. In addition, as an officer of the Long Canal Company for more than forty years, Mr. Sevy knew the water stock certificate was valuable and transferable. In fact, Mr. Sevy kept his own water stock certificate in a safe deposit box. Based upon these facts we think the Sevys could and should have discovered that Security Title had failed to protect their security interest in the 39 shares of water stock long before the Associates Financial lawsuit was filed and at a time which results in their action being time-barred.

### B. Balancing Test

■ The court in *Warren v. Provo City Corp.*, 838 P.2d 1125 (Utah 1992) explained that if the plaintiff meets the threshold discovery test, then the reviewing court moves to the balancing test, which is what "[t]he ultimate determination of whether a case presents exceptional circumstances that render the application of a statute of limitations irrational or unjust turns on." *Id.* at 1129. As noted in *Myers v. McDonald*, 635 P.2d 84 (Utah 1981), in applying the balancing test a court will balance the hardship the statute of limitations would impose on the plaintiff against any prejudice to the defendant resulting from difficulties of proof caused by the passage of time. *Id.* at 87; *see also Klinger v. Kightly*, 791 P.2d 868, 872 (Utah 1990).

Although we need not reach this prong of the discovery rule because the Sevys have failed to meet the threshold reason-

able discovery requirement, we note that the application of the discovery rule would create significant problems of proof for Security Title. Security Title's key witness Russell Dalton, who prepared all of the documents in the transaction, had *no* memory of the critical facts. Dalton testified at trial he did not have any specific recollection of the sales transaction. He could not remember if he gave the water certificate to Mr. Stewart, whether he advised Mr. Sevy to get an attorney, whether he advised Mr. Sevy to put the documents in a safe place, or whether he advised Mr. Sevy not to turn the water stock over to the Stewarts prior to the promissory note being paid off. Furthermore, the Stewarts testified their file on the transaction was lost and they could not remember many of the details of the transaction.

■ Were we to reach a balancing of the equities, we would conclude this is not the exceptional case where the statute of limitations should be tolled to allow a stale, ten-year old claim to be litigated. We cannot say it would be irrational or unjust to bar the Sevys' claim. The crucial witness for Security Title had no recollection of the transaction, which, in effect, denied Security Title the opportunity to refute the self-interested testimony of Mr. Sevy on critical factors. This would be true in most title transactions that occurred ten years earlier.

## DAMAGES AND ATTORNEY FEES

Because of our resolution of the statute of limitations issue, we also vacate the award of damages to the Sevys, including the Associates Financial attorney fees awarded as consequential damages. We also vacate the award of attorney fees to the Sevys for this action because there is no legal basis for the award. The trial court awarded attorney fees to the Sevys in this action based on two statutory provisions. First, the court concluded Security Title's actions were deceptive under the Utah Consumer Sales Practices Act (UCSPA). *See* Utah Code Ann. § 13–11–1 to –20 (1989 & Supp.1992). Second, the court concluded attorney fees were recoverable un-

der Utah Code Ann. § 78–27–56 (1992) because Security Title's defense was asserted without merit and not in good faith. The UCSPA provides no basis upon which to award the Sevys attorney fees in this action. The Sevys failed to plead a cause of action under the UCSPA, and certainly did not prove one. Additionally, Security Title's defense certainly was not without merit under § 78–27–56 as we have ruled in its favor on appeal.

## CONCLUSION

We conclude the Sevys have not met the threshold requirement to toll the statute of limitations under the "exceptional circumstances" discovery rule. The Sevys could and should have reasonably discovered that Security Title had failed to protect their security interest before 1987 and thus their action is time-barred. We therefore vacate the award of damages and attorney fees to the Sevys. We also award costs to Security Title.

GARFF and ORME, JJ., concur.