Harold SEVY and Winona Sevy,
Plaintiffs and Petitioners,

v.

SECURITY TITLE COMPANY OF
SOUTHERN UTAH, Defendant
and Respondent.

No. 930484.

Supreme Court of Utah.

Sept. 6, 1995.

Robert F. Orton and Mark F. Bell, Salt Lake City, for plaintiffs.

Bruce A. Maak, Jeffrey J. Hunt, Salt Lake City, and J. Bryan Jackson, Cedar City, for defendant.

On Certiorari to the Utah Court of Appeals

HOWE, Justice:

We granted certiorari to review the court of appeals' decision that the statute of limitations bars plaintiffs Harold and Winona Sevy's negligence action against defendant Security Title Company of Southern Utah. The decision reversed the trial court's judgment awarding the Sevys damages against Security Title for negligently failing to protect their security interest in water shares. *Sevy v. Security Title Co.*, 857 P.2d 958, 963 (Utah Ct.App.1993).

In 1981, the Sevys sold Kyle and Cindy Stewart approximately thirteen acres of farmland in Garfield County, Utah, along with thirty-nine shares of Long Canal Company stock that provided irrigation water to the land. The purchase price was $25,000 for the land and the water shares, with a down payment of $5,000 and the balance payable in annual installments. Both parties intended that the Sevys would convey title to the land and the water shares to the Stewarts and the Stewarts would give the Sevys a lien on the land and the water shares to secure the balance of the unpaid purchase price.

The parties engaged Security Title to prepare the documents of sale, transfer, and security. It prepared a warranty deed to convey the land and the water shares from the Sevys to the Stewarts, a promissory note in the amount of $20,000 from the Stewarts to the Sevys, and a deed of trust with assignment of rents (the trust deed) against the land and the water shares to secure the promissory note. According to industry practice at the time, it should have perfected the security interest in the water shares by recording the trust deed at the county recorder's office and delivering a certificate for thirty-nine shares of water stock to the Sevys. Although it recorded the trust deed, it mistakenly delivered the certificate to the Stewarts rather than to the Sevys.

After it closed the transaction, the Stewarts borrowed money from the Lockhart Company and delivered the certificate to it to secure the loan. Lockhart accepted the certificate and filed a financing statement to secure its interest in the water shares with the Utah State Division of Corporations and Commercial Code. The Stewarts eventually defaulted on their loan, and Lockhart assigned all of its rights against the Stewarts to Associates Financial Services of Utah, Inc.

After defaulting, the Stewarts petitioned for bankruptcy, and the trustee abandoned any interest in the thirty-nine shares of water stock. Seeking to foreclose on its security interest in the shares, Associates filed a lawsuit against the Sevys and Security Title in district court, asking the court to declare it the holder of a valid, perfected security interest in the shares, free from any claims by the Sevys or Security Title. Security Title made no appearance in the action, and the court entered a default judgment against it. The court also granted Associates' motion for

summary judgment against the Sevys. The Sevys appealed, and we poured the case over to the court of appeals. That court affirmed the judgment, holding that water stock is a "certified security" under Utah Code Ann. § 70A–9–105(1)(i) and that the Sevys must have taken possession of the stock certificate to perfect their security interest. *Associates Fin. Servs. v. Sevy,* 776 P.2d 650, 652 (Utah Ct.App.1989).

Meanwhile, the Stewarts defaulted on their promissory note to the Sevys. The Sevys took possession of the farm and brought this action against Security Title for negligently failing to protect their security interest in the water shares. The district court, noting that the statute of limitations for negligence actions is only four years, Utah Code Ann. § 78–12–25(3), found that more than eight years had passed since Security Title had closed the transaction between the Sevys and the Stewarts. However, the court held that the discovery rule applied to toll the statute of limitations until the Sevys discovered that Associates claimed a security interest in the shares. The court further held that Security Title had breached its duty to the Sevys and awarded them damages. Security Title appealed to the court of appeals, which reversed the judgment. We granted the Sevys' petition for a writ of certiorari. *Sevy v. Security Title,* 870 P.2d 957 (Utah 1994).

About three months before hearing oral arguments for this case, we decided *Salt Lake City Corp. v. Cahoon & Maxfield Irrigation Co.,* 879 P.2d 248 (Utah 1994). In *Cahoon,* this court disavowed *Associates Financial* and held that water stock is not a certified security but an interest in real property. *Id.* at 252. Therefore, recording a trust deed is sufficient to perfect a security interest, and Security Title arguably could not be liable to the Sevys for negligence because it had properly recorded that document. After hearing oral arguments, we asked the parties to submit supplemental briefs addressing the issue of whether *Cahoon* or *Associates Financial* should govern this case.

## I. RES JUDICATA

■ The Sevys contend that this court is precluded from applying the decision in *Ca-*

*hoon* to this case because the doctrine of res judicata requires the parties to abide by the court of appeals' decision in *Associates Financial.* The doctrine of res judicata embodies two separate theories called issue preclusion and claim preclusion. *Madsen v. Borthick,* 769 P.2d 245, 247 (Utah 1988). We will begin by analyzing the relationship between this case and *Associates Financial* under the theory of issue preclusion.

■ Issue preclusion, sometimes referred to as collateral estoppel, prevents the parties from relitigating issues resolved in a prior related action. *Timm v. Dewsnup,* 851 P.2d 1178, 1184 (Utah 1993). The party seeking to invoke this doctrine must satisfy four requirements. First, the party must show that the issue challenged in the case at hand is identical to the issue decided in the previous action. Second, the issue in the previous action must have been decided in a final judgment on the merits. Third, the issue in the previous action must have been competently, fully, and fairly litigated. Fourth, the opposing party in the action at hand must have been either a party or privy to the previous action. *Id.*

■ We find that the first requirement is met because the issues in this case and in *Associates Financial* are identical. The issue which the district court and the court of appeals addressed in *Associates Financial* was whether the Sevys had a perfected security interest in the water stock that was superior to that of Stewarts' creditors. *Associates Fin. Servs.,* 776 P.2d at 651. The issue presented here, which is whether in this action this court should apply the court of appeals' resolution of that issue or the resolution advanced in *Cahoon,* is essentially the same.

■ Security Title argues that the first requirement is not met because the remedy sought in *Associates Financial* is different from the remedy sought in this case. It points out that in *Associates Financial,* Associates pleaded for authorization to foreclose on the water shares without interference from the Sevys or from Security Title. In this case, the Sevys are pleading for dam-

ages from Security Title for negligently failing to perfect their security interest. Although we acknowledge this difference, it does not prevent the application of issue preclusion. It is well settled that issue preclusion prevents relitigation of the same issue even if the claims for relief in the two actions are different. *Penrod v. Nu Creation Creme, Inc.,* 669 P.2d 873, 875 (Utah 1983). In support of its assertion to the contrary, Security Title cites *Schaer v. State,* 657 P.2d 1337 (Utah 1983), in which this court referred to the theory of claim preclusion under the general term of res judicata and explained that the relitigation of claims is precluded only when both suits involve the same cause of action. *Id.* at 1340 (citing *Searle Bros. v. Searle,* 588 P.2d 689, 690 (Utah 1978)). Security Title fails to notice, however, that we later clarified that the separate theory of issue preclusion, or collateral estoppel, often "arises from a [d]ifferent cause of action and prevents parties or their privies from relitigating facts and issues in the second suit that were fully litigated in the first suit." *Id.* Therefore, *Schaer* does not support Security Title's argument.

█ In examining the second requirement of issue preclusion, we find that the court of appeals' decision in *Associates Financial* was a final judgment on the merits. The judgment was not further appealed or remanded, nor was it determined on the basis of an unrelated procedural issue. *See Robinson v. Myers,* 599 P.2d 513, 515 (Utah 1979) (explaining that a judgment based on a procedural issue does not constitute a judgment on the merits). Rather, the court of appeals examined the substantive arguments and based its decision on related case law.

█ Third, the issue of whether the Sevys had a superior security interest in the water shares was competently, fully, and fairly litigated in *Associates Financial.* Security Title argues that the issue was not properly litigated because it allowed its default to be entered in the action and the Sevys did not demand that it appear and defend the action. However, Security Title's failure to defend its position in *Associates Financial* bears no relationship to whether the issue was competently, fully, and fairly litigated by the Sevys

and Associates Financial. We find nothing in the record or in the *Associates Financial* decision which indicates that the parties did not adequately litigate the issue. Thus, we reject Security Title's argument.

Finally, we find that the fourth requirement is met because the Sevys and Security Title were both losing parties in *Associates Financial. See Robertson v. Campbell,* 674 P.2d 1226, 1230 (Utah 1983) (implying that issue preclusion is applicable only if it is being evoked against a party who lost in the prior action). Because the Sevys have demonstrated that all four elements of issue preclusion are met in this case, we find that the ruling of *Associates Financial,* not *Cahoon,* applies to this case. Thus, we need not examine whether the elements of claim preclusion are met.

Security Title argues that this court should apply *Cahoon* rather than *Associates Financial* to this case because judicial decisions are generally applied both prospectively and retrospectively. *Heslop v. Bank of Utah,* 839 P.2d 828, 835 (Utah 1992); *Malan v. Lewis,* 693 P.2d 661, 676 (Utah 1984). It points out that the only exception to this rule is if "there has been justifiable reliance on the prior state of the law or ... retroactive operation of the new law may otherwise create an undue burden." *Van Dyke v. Chappell,* 818 P.2d 1023, 1025 (Utah 1991). However, we need not examine whether *Cahoon* applies under the general rules of retroactive application because, as we have just explained, the theory of issue preclusion applies to bind these parties to the decision of *Associates Financial.*

Having determined that this case is governed by the court of appeals' decision in *Associates Financial,* we turn to the issues originally presented for review. The first issue is whether the discovery rule tolls the statute of limitations to the time when the Sevys first learned of Associates' claim of a security interest in the water shares. The second is whether the Sevys are entitled to attorney fees under the Utah Consumer Sales Practices Act. We address each of these issues separately.

## II. DISCOVERY RULE

The Sevys contend that the court of appeals erred in overturning the trial court's conclusion that the discovery rule tolled the statute of limitations until Associates brought its action against them and Security Title. Security Title counters that the discovery rule should not apply because the Sevys should have known of its failure to perfect their security interest in the water shares. It further asserts that by the time the Sevys filed this action, key witnesses no longer recalled critical facts of the transaction and essential documents, including the Stewarts' loan file, were lost.

■ As Security Title points out, "[S]tatutes of limitations 'are designed to promote justice by preventing surprises through the revival of claims that have been allowed to slumber until evidence has been lost, memories have faded, and witnesses have disappeared.'" *Myers v. McDonald,* 635 P.2d 84, 86 (Utah 1981) (quoting *Order of R.R. Telegraphers v. Railway Express Agency, Inc.,* 321 U.S. 342, 348–49, 64 S.Ct. 582, 586, 88 L.Ed. 788, 792 (1944)). The general rule regarding statutes of limitations is that the limitation period begins to run when the last event necessary to complete the cause of action occurs. *Becton Dickinson & Co. v. Reese,* 668 P.2d 1254, 1257 (Utah 1983). Under that rule, "'mere ignorance of the existence of a cause of action does not prevent the running of the statute of limitations.'" *Id.* (quoting *Myers,* 635 P.2d at 86). The discovery rule is an exception to the general rule, and it delays the running of the limitation period "'until the discovery of facts forming the basis for the cause of action.'" *Warren v. Provo City Corp.,* 838 P.2d 1125, 1129 (Utah 1992) (quoting *Myers,* 635 P.2d at 86).

### A. Knowledge of Negligence

The first step in determining whether the discovery rule applies is to examine whether the Sevys made the threshold showing that they did not know, nor should have known, of Security Title's negligence at the time of the closing. *See id.* ("[A]n initial showing must be made that plaintiff did not know of and could not reasonably have known of the existence of the cause of action in time to file a claim within the limitation period."). The Sevys assert that this issue is a question of fact and that the court of appeals failed to meet the "clearly erroneous" standard in overturning the trial court's conclusion that they neither knew nor should have known of the negligence. *See* Utah R.Civ.P. 52(a). Security Title counters that the court of appeals did not need to meet the clearly erroneous standard because this issue could have been decided as a question of law. It points out that it presented some pertinent facts that were undisputed by the Sevys and argues that because these facts clearly show that the Sevys discovered or reasonably should have discovered the negligent conduct at closing, the issue may be decided as a matter of law. In support of this argument, Security Title cites *Love v. Fire Insurance Exchange,* 221 Cal.App.3d 1136, 1142, 271 Cal.Rptr. 246, 248 (1990); *Reider v. Dawson,* 856 P.2d 31, 33 (Colo.Ct.App.1992), *aff'd,* 872 P.2d 212 (1994); *Reis v. Cox,* 104 Idaho 434, 438, 660 P.2d 46, 50 (1982); *Witherspoon v. Guilford,* 203 Mich.App. 240, 243, 511 N.W.2d 720, 722, *appeal denied,* 525 N.W.2d 451 (1994); *Holman v. Hansen,* 237 Mont. 198, 773 P.2d 1200, 1203 (1989); *Grubb Properties, Inc. v. Simms Investment Co.,* 101 N.C.App. 498, 501, 400 S.E.2d 85, 88 (1991); *Warren,* 838 P.2d at 1129; and *Klinger v. Kightly,* 791 P.2d 868, 869 (Utah 1990).

■ We hold that the issue of when a claimant discovered or should have discovered the facts forming the basis of a cause of action is a question of fact, and the fact finder's conclusion cannot be overturned on appeal unless it is clearly erroneous. *Andreini v. Hultgren,* 860 P.2d 916, 919 (Utah 1993); *Christiansen v. Rees,* 20 Utah 2d 199, 202, 436 P.2d 435, 437 (1968). We cannot accept Security Title's assertion that this issue becomes an issue of law simply because some "undisputed facts" indicate that the Sevys should have become aware of their injury at closing, despite the Sevys' factual presentations to the contrary and the parties' serious dispute in the matter. As this court stated in *Andreini,* 860 P.2d at 919, "This is a classic factual dispute that should be resolved by the finder of fact."

Further, we are not persuaded by the cases cited by Security Title in support of its argument. We acknowledge that two Utah cases support the principle that trial courts may, as a matter of law, determine whether particular actions or omissions are crucial to the application of the discovery rule to particular causes of action. *See Warren,* 838 P.2d at 1129 (requiring one injured in airplane crash to take reasonable steps to determine whether municipality was complying with its flying regulations); *Klinger,* 791 P.2d at 872 (explaining that the requirement that claimants use due diligence to discover facts underlying the cause of action does not require property owners to assume that survey is inaccurate). However, we are not asked to make such a determination in this case, and this principle is irrelevant to the issue at hand. Most of the other cases cited by Security Title hold that the question of when a plaintiff should have discovered a cause of action is a question of law only when no issues of material fact exist. *Love,* 271 Cal.Rptr. at 248; *Reis,* 660 P.2d at 50; *Witherspoon,* 511 N.W.2d at 722; *Grubb,* 400 S.E.2d at 88. However, in the instant case, issues of material fact exist. Both parties made extensive presentations of facts tending to support their respective conclusions about when the Sevys should have discovered Security Title's negligence, and we cannot say that these parties do not dispute this issue.

■ Next, we examine whether the court of appeals correctly decided that the trial court's ruling on this issue was clearly erroneous. We can make this finding only if the ruling contradicts the great weight of evidence or if court reviewing the evidence is left with "a definite and firm conviction that a mistake has been made." *State v. Walker,* 743 P.2d 191, 193 (Utah 1987). Although the court of appeals appears to have used the clearly erroneous standard in its review, we cannot agree with its reversal of the trial court's conclusion.

■ The court of appeals held that although the Sevys did not have actual knowledge of Security Title's negligence until Associates commenced its action, they should have known of the negligence at the time of the closing. *Sevy,* 857 P.2d at 963. The

court ruled that the trial court's conclusion to the contrary was clearly erroneous. *Id.* In support of its holding, the court of appeals cited the following facts:

> Mr. Sevy knew the water stock had been transferred to the Stewarts' name.... Mr. Sevy knew or should have known there was no ongoing escrow at Security Title because there was no document reflecting any ongoing escrow given to him at closing.... Mr. Sevy testified that he knew he did not receive the certificate representing the 39 shares of water stock, which had been transferred into the Stewarts' name. Nothing prevented the Sevys from asking Security Title about the 39 share water stock certificate and how Security Title was protecting their interest in those water shares. In addition, as an officer of the Long Canal Company for more than forty years, Mr. Sevy knew the water stock certificate was valuable and transferable. In fact, Mr. Sevy kept his own certificate in a safe deposit box.

*Id.*

We conclude that these facts do not support the holding that the trial court's conclusion is contrary to the great weight of evidence. The trial court relied upon a body of facts equal in weight to those relied upon by the court of appeals. The trial court cited those facts as follows:

> Members of the general public rely generally on title insurance companies to properly prepare documents and conduct real estate transactions and closings and further rely on what they are told by title companies with respect to real estate transactions....
>
> [Harold] Sevy relied on Security Title to protect him by providing in said transaction a good and valid first lien in his favor against the real property and shares of water stock being sold and transferred to Stewart....
>
> Harold Sevy[ ] is a farmer, does not have a formal education, and relied on Security Title to prepare proper documents and secure his first lien against the real property and water stock. Said Plaintiff had, prior to said transaction, been an

officer of The Long Canal Company, but had no knowledge regarding how to transfer shares and how to perfect security interests therein.... 

Winona Sevy[ ] did nothing more in this transaction than sign documents as requested by her husband, Harold Sevy.

Moreover, the trust deed indicated that both the land and the water shares were secured, and Mr. Sevy testified that he thought the recording secured them. Further, he had successfully relied upon the expertise of Russell Dalton, Manager of Security Title, in the past. We cannot find that these facts are so insignificant that they give rise to a "definite and firm conviction" of error. *See Walker*, 743 P.2d at 193. Therefore, we vacate the court of appeals' ruling on this issue and affirm the trial court's conclusion that the Sevys neither knew nor should have known of Security Title's negligence until after the limitation period had run.

### B. Exceptional Circumstances

■ Having made this determination, we must examine whether the circumstances of this case trigger the application of the discovery rule. The discovery rule applies in three situations: (1) where it is mandated by statute, (2) where the defendant concealed the facts or misled the claimant and, as a result, the claimant did not become aware of the cause of action until after the limitation period had run, and (3) exceptional circumstances where the application of the general rule would be "irrational or unjust." *Warren*, 838 P.2d at 1129.

■ The Sevys argue that exceptional circumstances exist in this case. "The ultimate determination of whether a case presents exceptional circumstances that render the application of a statute of limitations irrational or unjust" is a balancing test. *Id.* The balancing test weighs the hardship imposed on the claimant by the application of the statute of limitations against any prejudice to the defendant resulting from the passage of time. *Myers*, 635 P.2d at 87. Some factors this court considers in applying this test include whether the defendant's problems caused by the passage of time are greater than the plaintiff's, whether the de-

fendant performed a technical service that the plaintiff cannot reasonably have been expected to evaluate, and whether the claim has aged to the point that witnesses cannot be located, evidence cannot be found, and the parties cannot remember basic events. *See Klinger*, 791 P.2d at 872; *Myers*, 635 P.2d at 87.

■ We hold that exceptional circumstances in this case support the application of the discovery rule. As the Sevys point out, the task of perfecting a security interest requires technical knowledge not possessed by people in general, and the nature of this task is such that a negligent failure to perform it properly may not be discovered until years later. In *Klinger*, 791 P.2d at 872, we relied in part upon a similar argument to allow the discovery rule to toll the statute of limitations. In that case, buyers of real property brought an action against a surveyor who had negligently surveyed their property. We noted that because surveying requires technical knowledge and yields intangible results, the buyers had "no reason to suspect that the survey was inaccurate." *Id.* We also noted that the surveyor's difficulties in litigating the action were that "no survey records or notes [were] available after fourteen years and, presumably, the memories of the members of the survey party [had] dimmed.... [However, the] signor on the survey certificate [was] responsible for its content, [was] still actively engaged in the practice of surveying, and [was] available for testimony." *Id.* After contrasting the prejudice to the buyers with the hardship to the surveyor, we concluded that the evidence was "not so stale or remote as to outweigh the prejudice to" the vendors in having their claim barred by the statute of limitations. *Id.*

Security Title's difficulties in litigating this action are not greater than those of the surveyors in *Klinger*. Security Title asserts that records and files have been lost and that Russell Dalton, manager of Security Title, has no recollection of the transaction. However, the critical documents are still avail-

able,[1] and Dalton is still with the company and available for testimony. Therefore, Security Title's difficulties in litigating this action do not outweigh the prejudice inflicted on the Sevys by the statute of limitations, which would credit them with the ability to detect latent flaws in a technical procedure of which they had no basis of understanding.

Security Title argues that the same facts relied upon by the court of appeals in ruling that the Sevys knew or should have known of Security Title's negligence also support a finding that exceptional circumstances do not exist in this case. However, those facts do not undermine the reasoning outlined above. They do not reveal any additional difficulties faced by Security Title, nor do they show that the Sevys had technical knowledge of how to perfect security interests, either by virtue of Harold Sevy's position as an officer of the Long Canal Company or by virtue of his experience as a farmer. Thus, we vacate the court of appeals' ruling and affirm the trial court's ruling that exceptional circumstances in this case allowed the discovery rule to toll the statute of limitations until Associates brought their action against the Sevys.[2]

### III. ATTORNEY FEES

■ The Sevys contend that the court of appeals erred in overturning the trial court's ruling that they were entitled to attorney fees under the Utah Consumer Sales Practices Act, Utah Code Ann. §§ 13–11–1 to –23, for bringing this action. Security Title counters that this issue is not properly before this court because the Sevys failed to request review of this ruling in their petition for a writ of certiorari. We agree.

■ Rule 49 of the Utah Rules of Appellate Procedure states that although the statement of issues presented in a petition for a writ of certiorari "will be deemed to comprise every subsidiary question fairly included therein[,] [o]nly the questions set forth in the petition or fairly included therein will be

considered by the Supreme Court." We believe that this rule should be construed broadly to avoid the rigid exclusion of reviewable issues, however peripheral. However, in this case, this rule cannot be stretched to include the issue of attorney fees.

The Sevys presented the following four questions for review in their petition:

1. Whether the Utah Court of Appeals erred in reversing the trial court and concluding, as a matter of law, that Petitioners' claim is time-barred because they could and should have reasonably discovered, before 1987, that the Respondent had failed to protect their security interest;

2. Whether the Utah Court of Appeals erred in failing and refusing to apply the discovery rule to toll the four year statute of limitations where Petitioners did not know and should not reasonably have known of Respondent's professional negligence and misconduct and suffered no damages until a time which was less than four years before they filed suit;

3. Whether the Utah Court of Appeals erred in concluding that the trial court's findings were clearly erroneous and/or in failing to remand this case to the trial court for a determination of when Petitioners should have discovered Respondents' professional negligence and misconduct;

4. Whether the issues presented are sufficient to invoke this Court's judicial discretion and justify review by writ of certiorari under Rule 46 of the Utah Rules of Appellate Procedure.

These four questions all deal strictly with the application of the discovery rule. Therefore, the issue of attorney fees is not before us.

The court of appeals' decision is vacated, except for the denial of attorney fees as discussed above. The judgment of the trial court is reinstated except for the award of attorney fees in bringing this action.

1. The documents still available include the trust deed, the warranty deed, the note secured by the trust deed, and the water stock certificate.

2. The Sevys filed this action on December 27, 1989, about two and a half years after Associates filed suit against them. Thus, the action was commenced within the four-year statute of limitations once it began to run.

RUSSON, J., and WILLIAM B. BOHLING, District Judge, concur.

ZIMMERMAN, C.J., and STEWART, Associate C.J., concur in the result.

DURHAM, J., having disqualified herself, does not participate herein; WILLIAM B. BOHLING, District Judge, sat.