### Michael W. HOM, Plaintiff and Appellant,

### v.

### UTAH DEPARTMENT OF PUBLIC SAFETY, a governmental agency; Cherie Ertel; Douglas Bodrero; A. Roland Squire; Arthur Hudachko; Bart Blackstock; and John Does I through X, Defendants and Appellees.

### No. 970592–CA.

Court of Appeals of Utah.

July 16, 1998.

---

L. Zane Gill, Salt Lake City, for Appellant.

Jan Graham and Debra J. Moore, Salt Lake City, for Appellees.

Before BENCH, BILLINGS and ORME, JJ.

BILLINGS, Judge:

Michael Hom appeals the trial court order granting summary judgment in favor of the Utah Department of Public Safety (the Department) and individual defendants in Hom's suit for breach of employment contract, breach of implied covenant of good faith and fair dealing, and disability discrimination. We affirm.

## FACTS

Because this is an appeal from a grant of summary judgment, we recite the facts in the light most favorable to the nonmoving party. *See Glover v. Boy Scouts of Am.*, 923 P.2d 1383, 1384 (Utah 1996). Hom presents the following account of the events leading up to and surrounding his termination from the Department.

Hom was hired in 1985 as a programmer/analyst. Although Hom was employed by the Department and had access to sensitive law enforcement information, he was a career civil servant and not a sworn police officer. His primary responsibilities were to provide technical assistance and to remain on call to deal with computer problems for the Bureau of Criminal Investigation (BCI) and the Driver License Division. From 1985 through 1987, Hom performed satisfactorily and received positive evaluations on his job performance. However, Hom concedes that during this period his supervisor advised him in job evaluations that he should try to improve his "political and people skills."

In 1987, Hom was appointed the technical subcommittee chairperson for a "Request for Proposal Committee" (RPC) formed by the Department to select a vendor for a new computer system. Hom's RPC duties were in addition to his regular work. Hom lost sleep, frequently worked twenty-hour days,

and felt stress and pressure because of overwork. As the RCP selection process progressed, Hom became convinced that his fellow committee members were acting illegally to favor certain vendors. Hom confronted the other RPC members about this perceived illegal conduct. As a result of these confrontations, several coworkers lodged complaints against Hom, and he was banned from the Driver License Division offices.

During the RPC dispute, Hom also became involved in a dispute with his direct supervisor about overtime hours. Hom filed a grievance on this issue and won an award of additional overtime. Hom used the overtime to take a leave of absence, and he was away from the Department from November 1988 to May 1989.

In July 1989, Hom was assigned to supervise the Driver License Division annual job run, a major annual event in which Department personnel purged the Driver License Division computer files. Hom encountered problems during the job run, and these problems led to a second internal affairs investigation. As a result of the job run incident, Hom's immediate supervisor issued a letter of intent to reprimand and met with Hom to explain the reasons for the reprimand. The supervisor was concerned with Hom's refusal to obey the supervisor's direct orders, and Hom's inability to provide a satisfactory explanation for the job run failure. Hom's supervisor was also concerned because Hom had ignored explicit instructions during the job run. The supervisor informed Hom that he could discuss disagreements and alternatives with supervisors, but in the future Hom would be expected to carry out supervisors' instructions even if he disagreed with them. Hom objected to this requirement. Hom then made a statement about having the power to crash and disable the Department computer system. Hom asserts that he intended this statement as a claim that he would not follow an order that would crash the system. However, Hom's supervisor interpreted it as a threat that Hom would crash the system.

After this meeting, Hom was placed on temporary leave. On his return, Hom met with the BCI chief to discuss the internal affairs investigation and Hom's own plans to file a grievance over the job run incident. Hom alleges that the Department head attempted to dissuade him from prosecuting his grievance and "warned him to work things out with" his supervisor. At this meeting, Hom made another statement about his power to damage the computer system. While Hom remembers this comment as a response to a theoretical question, the BCI chief remembers it as "coming out of the blue" and sounding like a threat. Shortly after making this comment, Hom broke down and began crying uncontrollably. The BCI chief later stated that he felt Hom was "on a downward spiral" and had become emotionally unstable. However, Hom states the BCI chief never recommended that he seek counseling.

During the subsequent internal affairs investigation, Hom's superiors concluded that he was responsible for the job run failure, had acted insubordinately, and had perjured himself. Hom was dismissed from the Department in March 1990. The Department gave the following reasons for the dismissal: 1) Hom was perceived to be a security threat, 2) Hom had committed perjury, 3) Hom had committed malfeasances and misfeasance, and 4) Hom had been insubordinate.

Hom appealed his termination administratively under the Utah State Personnel Management Act (Personnel Management Act), but his administrative appeal was ultimately dismissed for lack of prosecution. In 1994, Hom filed suit against the Department, claiming that his dismissal violated the Personnel Management Act and Department of Human Resources (DHR) regulations implementing that Act. In 1995, Hom amended his complaint to add a disability discrimination claim under the Federal Vocational Rehabilitation and Other Rehabilitation Services Act of 1978 (the Rehabilitation Act), 29 U.S.C. §§ 701 to 796 (Supp.1998). The trial court granted summary judgment in favor of the Department, dismissing both claims. Hom now appeals.

## ANALYSIS

Hom presents two arguments on appeal. First, he argues the trial court erred in

barring his wrongful termination claim under the three-year statute of limitations for violations of rights created by statute. He asserts that his suit was an action for breach of contract subject to the six-year statute of limitations for claims arising out of contracts in writing under Utah Code Ann. § 78–12–23(2) (1996). Second, Hom argues the trial court erred in refusing to toll the statute of limitations on his disability discrimination claim under the discovery rule. "Because summary judgment presents only a question of law, we review the trial court's determinations under a standard of correctness, according no deference to the trial court's legal conclusions." *Macris & Assocs., Inc. v. Images & Attitude,* 941 P.2d 636, 639 (Utah Ct.App.1997).

## I. Did Hom Fail to Exhaust His Administrative Remedies?

As a threshold issue, we first address the Department's argument that we lack jurisdiction over this case because Hom has failed to exhaust his administrative remedies under the Personnel Management Act. Hom argues that we cannot consider this issue because the Department did not raise it before the trial court. We disagree. If Hom has failed to exhaust his administrative remedies, then we lack subject matter jurisdiction, and we must dismiss the case "[r]egardless of who raises the issue." *Maverik Country Stores, Inc. v. Industrial Comm'n,* 860 P.2d 944, 947 (Utah Ct.App.1993); *see also Hi–Country Homeowners Ass'n v. Public Serv. Comm'n,* 779 P.2d 682, 684 (Utah 1989) (holding court had no subject matter jurisdiction where plaintiff failed to timely appeal an agency order); *Heinecke v. Department of Commerce,* 810 P.2d 459, 462–64 (Utah Ct. App.1991) (addressing defense of failure to exhaust remedies though raised for first time at oral argument on appeal). "When a matter is outside the court's jurisdiction it retains only the authority to dismiss the action." *Varian–Eimac, Inc. v. Lamoreaux,* 767 P.2d 569, 570 (Utah Ct.App.1989).

Under Utah law, parties protesting agency actions must generally exhaust all available administrative remedies before seeking judicial relief. "The basic purpose underlying the doctrine of exhaustion of administrative remedies 'is to allow an administrative agency to perform functions within its special competence—to make a factual record, to apply its expertise, and to correct its own error so as to moot judicial controversies.'" *Maverik Country Stores,* 860 P.2d at 947 (quoting *Parisi v. Davidson,* 405 U.S. 34, 37, 92 S.Ct. 815, 818, 31 L.Ed.2d 17 (1972)); *accord State Farm Mut. Auto. Ins. Co. v. Utah Indus. Comm'n,* 904 P.2d 236 (Utah Ct.App.1995).

In this case, the Grievance and Appeal Procedures Act, Utah Code Ann. §§ 67–19a–101 to –408 (1996), provided a clearly available administrative remedy. The Grievance and Appeal Procedures Act provides a formal review process for career service employee dismissals. *See* Utah Code Ann. § 67–19a–401 (1996). Furthermore, the Act explicitly prohibits judicial review of a career service employee's grievance when the employee has failed to pursue the grievance in a timely manner:

> (4)(a) Unless the employee meets the requirements for excusable neglect established by rule, if the employee fails to process the grievance to the next step within the time limits established in this part, he has waived his right to process the grievance *or to obtain judicial review of the grievance.*

*Id.* § 67–19a–401(4)(a) (1996) (emphasis added).

Hom failed to complete the administrative appeal process. Hom initially appealed his dismissal to the Career Services Review Board (the Board) under the Grievance and Appeal Procedures Act. However, Hom failed to actively pursue his administrative appeal. Thus the Board dismissed Hom's appeal in 1993 for failure to prosecute.

Hom attempts to dodge his jurisdictional problem by casting his claim as a civil action for breach of contract, rather than an action to vindicate rights created by the Personnel Management Act. Hom argues that the Personnel Management Act and its implementing regulations created a contract of employment in writing that was sufficient to give rise to a civil suit for breach of contract.

Hom relies on several Utah cases to argue by analogy that the Personnel Management Act and implementing regulations create separate contractual rights for state employees. These cases fall into two groups. The first group includes cases holding that public employees have a contractual right to accrued retirement benefits. *See Ellis v. State Retirement Bd.*, 757 P.2d 882, 886 (Utah Ct. App.1988), *aff'd*, 783 P.2d 540 (Utah 1989); *Newcomb v. Ogden City Pub. Sch. Teachers' Retirement Comm'n*, 121 Utah 503, 508–10, 243 P.2d 941, 944 (1952). The second group includes cases holding that personnel policy manuals or other agreements between state agencies and their employees can create contractual rights in addition to the public employees' underlying statutory rights. *See Thurston v. Box Elder County*, 835 P.2d 165, 169 (Utah 1992) (*Thurston I* ); *Piacitelli v. Southern Utah State College*, 636 P.2d 1063, 1065–67 (Utah 1981). Both groups of cases are clearly distinguishable from Hom's case.

Hom relies first on Utah cases holding that public employees have a contractual right to vested retirement benefits that cannot be abrogated by new state legislation. Under Utah law, public pension and retirement systems give rise to vested contractual rights. *See, e.g., Ellis*, 757 P.2d at 885–86; *Driggs v. Utah Teacher's Retirement Bd.*, 105 Utah 417, 421–23, 142 P.2d 657, 659–60 (1943). Hom argues that his right to continued employment under the Personnel Management Act is comparable to a state employee's right to vested retirement benefits.

Utah and other jurisdictions have consistently treated vested retirement and disability benefits as an exception to the general rule that civil servants' employment rights are statutory rather than contractual. *See, e.g., Miller v. California*, 18 Cal.3d 808, 135 Cal.Rptr. 386, 557 P.2d 970, 973 (1977); *Gili v. Oregon State Univ.*, 49 Or.App. 379, 619 P.2d 938, 939–40 (1980); *Personnel Division v. St. Clair*, 10 Or.App. 106, 498 P.2d 809, 811 (1972). We acknowledged this distinction in *Ellis*, 757 P.2d at 886, where we stated that a public employee obtains vested rights to retirement benefits "only when he has satisfied all conditions precedent to receiving his ben-efit, i.e., he has attained retirement age, or has been medically disabled."

The crux of *Ellis* and other public retirement benefits cases was whether benefits earned by retired employees under a previous legislative scheme could be diminished or abrogated by new legislation. Hom's case is not comparable to these cases because it is a straightforward dispute about whether the Department met the requirements of the Personnel Management Act when it dismissed Hom for cause. Thus we conclude that our past treatment of vested retirement benefits has no bearing on our characterization of Hom's claim of wrongful termination under the Personnel Management Act.

In addition to the retirement benefits cases, Hom cites several Utah cases where agency personnel manuals and similar documents were held to create contractual employment rights separate from the underlying statutory rights of public employees. *See Thurston I*, 835 P.2d at 168; *Thurston v. Box Elder County*, 892 P.2d 1034, 1037–39 (Utah 1995) (*Thurston II* ); *Piacitelli*, 636 P.2d at 1065–67. Hom claims these cases show that the Personnel Management Act and implementing regulations constitute a written employment contract between Hom and the Department. We disagree.

In *Piacitelli*, the Utah Supreme Court addressed a claim by a counselor at a state college that his termination violated his due process rights as set forth in the college's personnel manual. *See Piacitelli*, 636 P.2d at 1064. However, the employee in *Piacitelli* was explicitly exempt from the Personnel Management Act, and the court found that the college's personnel manual had created a separate employment contract in place of the statutory scheme. *See id.* at 1066. Under these facts, the court found that Piacitelli's employment relationship with the college was governed by the college's personnel manual and was therefore contractual rather than statutory. *See id.* Thus, *Piacitelli* involved an exempt employee with a written contract separate from the Personnel Management Act, and it has no bearing on Hom's claim that the Personnel Management Act and implementing regulations constitute an actionable employment contract.

In *Thurston I* and *Thurston II,* a county employee sued for wrongful termination, casting his suit as an action for breach of an employment contract created by the county personnel manual. *See Thurston I,* 835 P.2d at 167. The Utah Supreme Court remanded the case, holding that the action was properly a statutory claim under the Personnel Management Act. *See id.* at 170. On remand the county argued that it was exempt from the Personnel Management Act because it had fewer than 130 employees. However, the court below refused to overrule the supreme court under the law of the case doctrine. *See Thurston II,* 892 P.2d at 1037. We conclude that *Thurston I* and *Thurston II* do not establish, as Hom claims, that public employees' wrongful termination actions should be treated as suits for breach of contract.

Other jurisdictions faced with similar claims have uniformly rejected the proposition that a public employment act and implementing regulations, without more, create a contractual right to continued public employment. *See, e.g., Thorin v. Bloomfield Hills Bd. of Educ.,* 203 Mich.App. 692, 513 N.W.2d 230, 237 (Mich.Ct.App.1990) (Corrigan, P.J., concurring) (stating recognition of contractual claims "in the public sector would have significant adverse policy ramifications ... [and] lead to the denial of the right of the people, through their elected representatives, to decide crucial political questions"); *Smith v. City of Newark,* 128 N.J.Super. 417, 320 A.2d 212, 218 (1974), *rev'd on other grounds,* 136 N.J.Super. 107, 344 A.2d 782 (1975) (stating "it is well settled that 'the terms and conditions of public service in office or employment rest in legislative policy rather than contractual obligations, and hence may be changed'" (citation omitted)).

Hom has not argued that the Department entered into any contract with him that altered or added to the terms and conditions of public employment included in the Personnel Management Act and implementing regulations. We conclude that Hom's wrongful termination claim is an action in vindication of rights created by the Personnel Management Act. Consequently, the Grievance and Appeal Procedures Act required Hom to pursue his grievance through an administrative appeal. By allowing his Career Service Review Board appeal to be dismissed for failure to prosecute, Hom "waived his right to ... obtain judicial review" of his dismissal. Utah Code Ann. § 67–19a–401(4)(a) (1996). Hom has therefore failed to exhaust his administrative remedies, and we have no jurisdiction to adjudicate his statutory claim.

## II. Did the Court Err in Dismissing Hom's Federal Disability Discrimination Claim?

 Hom also filed a disability discrimination claim against the Department based on the Rehabilitation Act, 29 U.S.C. §§ 701 to –796 (Supp.1998). The statute of limitations for claims under the Rehabilitation Act is the four-year statute of limitations applicable to personal injury actions generally. *See Baker v. Board of Regents,* 991 F.2d 628, 631–32 (10th Cir.1993) (holding statute of limitations for Rehabilitation Act claims is state limit applicable to personal injury claims). Thus the trial court concluded this claim was barred by the statute of limitations and dismissed it. Hom concedes that the four year statute of limitations applies to this cause of action. However, he argues that the trial court erred in dismissing his claim because the running of the statute of limitations was tolled in his case by operation of the discovery rule. "Because the issue of whether the discovery rule applies to toll the statute of limitations is a question of law, we need show no deference to the trial court's ruling on appeal, but we review it for correctness." *Klinger v. Kightly,* 791 P.2d 868, 870 (Utah 1990).

 The discovery rule tolls the running of a statute of limitations in some instances where a plaintiff was not in a position to know of the existence of the cause of action before the end of the limitation period. *See Sevy v. Security Title Co.,* 857 P.2d 958, 961– 63 (Utah Ct.App.1993), *vacated in part,* 902 P.2d 629 (Utah 1995). Utah courts will apply the discovery rule in three exceptional situations:

> (1) in situations where the discovery rule is mandated by statute; (2) in situations where a plaintiff does not become aware of the cause of action because of the defendant's concealment or misleading conduct;

and (3) in situations where the case presents exceptional circumstances and the application of the general rule would be irrational or unjust, regardless of any showing that the defendant has prevented the discovery of the cause of action.

*Anderson v. Dean Witter Reynolds, Inc.,* 920 P.2d 575, 578 (Utah Ct.App.), *cert. denied,* 929 P.2d 350 (Utah 1996).

Hom urges us to apply the discovery rule in this case because 1) other Department employees concealed from him the fact that his mental instability was one reason for his termination, and 2) exceptional circumstances exist in this case that prevented him from discovering the existence of a cause of action under the Rehabilitation Act.

### A. Concealment

 Under the concealment prong of the discovery rule, a plaintiff must establish a prima facie case that defendants actively concealed the existence of a cause of action and that, given defendants' actions, "a reasonable plaintiff would not have discovered the claim earlier." *Berenda v. Langford,* 914 P.2d 45, 51 (Utah 1996). Hom alleges the following facts to establish a prima facie case of concealment. First, his termination notice did not include mental disability in the list of reasons for his firing. Second, in interrogatories during the early stages of litigation, the defendants did not state that they thought Hom was mentally or emotionally disabled. Third, in depositions later in the litigation, several employees, including Hom's direct supervisor, stated that they began to worry about his mental stability toward the end of his employment because he acted irrational, angry, and "kooky."

These facts are insufficient to establish that defendants took affirmative steps to conceal the existence of a cause of action. First, the evidence indicates that Hom's termination was based on his inability to perform his job or interact acceptably with coworkers, not on any perceived mental disability. Second, Hom has not alleged that any Department employees took affirmative steps to conceal a cause of action. At most, the facts as Hom recounts them suggest that some Department employees thought Hom should

seek counseling but did not explicitly tell him so. These facts do not add up to an allegation that Hom's coworkers "took affirmative steps" that would have prevented a reasonable person from discovering this alleged cause of action. *See Berenda,* 914 P.2d at 51. We find this case similar to *Anderson,* where we stated that "the facts underlying the allegation of fraudulent concealment are so tenuous, vague, or insufficiently established that they fail to raise a genuine issue of material fact as to concealment." *Anderson,* 920 P.2d at 580 n. 4. Thus we conclude Hom has not established a prima facie case of concealment.

### B. Exceptional Circumstances

 Hom also argues that his case presents exceptional circumstances that justify application of the discovery rule. To meet the exceptional circumstances prong of the discovery rule, a plaintiff must make two showings. First, he must show that he "did not know of and could not reasonably have known of the existence of the cause of action in time to file a claim within the limitation period." *Sevy,* 857 P.2d at 962. Once a plaintiff has made this threshold showing, the court must then apply a balancing test to determine "whether a case presents exceptional circumstances that render the application of a statute of limitations irrational or unjust." *Id.* at 963. "Simple ignorance of or obliviousness to the existence of a cause of action will not prevent the running of the statute of limitations." *Anderson,* 920 P.2d at 578. "All that is required to trigger the statute of limitations is … sufficient information to … put [plaintiffs] on notice to make further inquiry if they harbor doubts or questions." *Berenda,* 914 P.2d at 51.

Hom presents no evidence to support his claim that he did not know or could not reasonably have known of this cause of action. On the contrary, Hom knew all the facts supporting his claims within the statutory period. Hom knew that he was under severe stress. Hom was aware of his deteriorating relations with coworkers. Hom knew of the complaints filed against him and of other employees' statements that they feared he was dangerous. He also knew that he had been banned from the Driver License

Division, and that his superiors had consulted the FBI because they thought he posed a serious security risk. These facts were more than sufficient to put Hom on notice that his superiors believed he was unstable. Even assuming such instability would qualify as an actionable disability, we conclude that the events leading up to and surrounding Hom's dismissal should have put Hom on notice that the Department might have terminated him because of a perceived mental or emotional disorder. Thus we hold the discovery rule does not apply, and Hom's disability discrimination claim is barred by the statute of limitations.

## CONCLUSION

We conclude that Hom failed to exhaust his administrative remedies under the Utah State Personnel Management Act. Thus we dismiss Hom's wrongful termination claim for lack of jurisdiction. We also conclude that the discovery rule did not toll the running of the statute of limitations on Hom's disability discrimination claim. Thus we hold that Hom's disability discrimination claim is barred by the statute of limitations.

BENCH and ORME, JJ., concur.